## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: NETGAIN TECHNOLOGY, LLC, CONSUMER DATA BREACH LITIGATION** | **Court File No. 21-cv-1210 (SRN/LIB)** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay and Robin Guertin and the Class they represent have reached a settlement with Defendant Netgain Technology, LLC ("Netgain") to resolve claims arising from the data breach at, and ransomware attack on, Netgain that took place from September to December 2020, during which a third-party accessed sensitive information of Plaintiffs and the Class (the "Data Breach"). Plaintiffs and the Class will benefit from the $1,900,000.00 Settlement Fund. The settlement provides relief to Settlement Class Members and lies within the range of reasonableness necessary to establish Final Approval under Rule 23(e). The Court should, therefore, preliminarily approve the settlement, direct that notice to Class Members be provided in the reasonable manner proposed below, set deadlines for exclusions, objections, and

briefing on Plaintiffs' motion for final approval and petition for service awards, attorneys' fees, and costs, and set a date for the final fairness hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Effective May 2, 2025, Plaintiffs and Counsel for Plaintiffs and the Class entered into a Settlement Agreement and Release ("Settlement") with Defendant Netgain Technology, LLC ("Netgain" or "Defendant").[1]  Plaintiffs[2] and Netgain have agreed to resolve all claims related to the Data Breach.[3]  Pursuant to the distribution plan set forth in the Settlement, Netgain will provide a Settlement Fund of $1,900,000.00 to be distributed to Class Members, and to pay for settlement class notice and administration, service awards, and attorneys' fees.

### A. The Benefits the Settlement Provides.

The Settlement defines the Settlement Class as:

> all natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their

---

[1] The Settlement is attached as Exhibit A to the Declaration of Christopher P. Renz in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Renz Decl." or "Renz Declaration") "Exh. A-_" refers to exhibits to the Settlement Agreement and Release, which are also attached to the Renz Declaration.

[2] Note that Mark Kalling has previously been a class representative and named Plaintiff to-date.  However, Plaintiffs' counsel were unable to reach Mr. Kalling at and around the time the Settlement needed to be signed despite multiple and varied efforts.  As such, he is not included as a class representative in the Settlement, though there is a blank signature line for him; relatedly, no service award is sought for Mr. Kalling.

[3] Section 3 of the Settlement provides for Plaintiffs to confirm Defendant's financial condition and a process by which Plaintiffs, following a meet and confer, can terminate the Settlement in the event that Plaintiffs determine the documents provided by Netgain do not confirm the financial condition Defendant represented.

Personal Information may have been compromised in the Attacks.
Excluded from the Settlement Class are: (1) the Judges presiding over the
Action and members of their families; (2) Netgain, its subsidiaries, parent
companies, successors, predecessors, and any entity in which Netgain or its
parents, have a controlling interest, and its current or former officers and
directors; (3) natural persons who properly execute and submit a Request
for Exclusion prior to the expiration of the Opt-Out Period; and (4) the
successors or assigns of any such excluded natural person.

(Exh. A ¶ 1.45.)  Under the proposed settlement, Netgain agrees to pay a total of
$1,900,000.00 into the Settlement Fund.  (*Id.* ¶ 4.1.)

One of the primary basis for the settlement was Netgain's financial condition, as
represented by Netgain's counsel.  (Renz Decl. ¶ 8.)  To ensure that Netgain's
representations in this regard were accurate, the Settlement requires that Netgain provide
to Plaintiffs and Class Counsel certain financial information reviewable by experts of
Plaintiffs' or Class Counsel.  (Renz Decl., Exh. A ¶¶ 3.1-3.4.)

Each Class Member will have the option to submit a claim for Documented Loss
or Lost Time, or in the alternative, for a cash payment.  (*Id.* ¶ 4.2.)  The maximum
amount that a Class Member can recover for Documented Loss and/or Lost Time is
$5,000.00.  (*Id.*)  After payments are made for all approved claims to Loss Claimants, the
amount remaining in the Settlement Fund (after claims administration expenses, service
awards, and attorney fees are deducted) will be distributed *pro rata* among the Class
Members who submitted a valid claim for a cash payment. (*Id.* ¶ 4.2)  No portion of the
Settlement Fund will revert back to Netgain unless there is a Termination of the
Settlement.  (*Id.* ¶¶ 4.9, 4.10, 4.11.)  The Settlement's finality is not dependent on the
Court awarding attorneys' fees and expenses to Settlement Class Counsel.  (*Id.* ¶ 10.3

3

(providing that payment of fees is contingent upon order of the Court on Class Counsel's separate application).)

Netgain has also agreed to injunctive relief for a period of three years from the Effective Date. (*Id.* ¶¶ 2.1, 2.2.) Specifically, Netgain has agreed to adopt, continue, or implement: upgrading firewalls, routing through secured gateways, geo-blocking, ensuring its network is configured in a secure and scaleable manner, deploying virus prevention technology across Netgain's data environment, utilizing multi-factor authentication in hosting environments, and backing up data protection. (*Id.* ¶ 2.1.) These measures will be maintained for at least 3 years following the Effective Date of the Settlement, with mechanisms for Class Counsel to ensure Netgain is employing these injunctive measures. (*Id.* ¶¶ 2.2, 2.3.)

In exchange for the consideration above, Plaintiffs and the Class members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Netgain from claims arising from or related to the Data Breach at issue in this litigation. (*Id.* ¶ 5.1.)

### B. The Notice and Administration Plans

Settlement Class Counsel has selected CPT Group, Inc. ("CPT") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. (Renz Decl. ¶ 4; *see also* Declaration of Julie N. Green in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan ("Green Decl.").) The parties have reviewed the body of data stolen in the Data Breach at issue and determined that direct notice by e-mail or U.S. Mail is not achievable

4

considering the complicated nature of the data and the financial resources at issue.  (Renz Decl., Exh. A ¶ 7.4.)  As a result, Notice is being provided by CPT engaging in an extensive 45 day media campaign, including but not limited to Internet advertising, social media advertising, and establishment of a settlement website, all targeted to reach Class Members.  (*Id.* ¶ 7.5; Renz Decl. ¶ 4; Green Decl. ¶¶ 14-20.)  The notice via media campaign will direct Class Members to a dedicated website to be established by CPT where the notices, forms, a copy of the Settlement Agreement, and other relevant documents will be available.  (Green Decl. ¶¶ 14-20.)  The notice clearly and concisely informs Class members that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form and be bound by the Settlement.  (Renz Decl.  ¶ 4.)

Finally, CPT will be responsible for accounting for all the claims made and exclusions requested, determining eligibility, and for disbursing funds from the Settlement Escrow Account directly to Settlement Class members.  (Renz Decl., Exh. A ¶ 4.5, 4.12, 4.14, 4.16, 8.2(b).)

### C. History of the Litigation

On May 13, 2021, Plaintiffs Misty Meier and Jane Doe filed a Class Action Complaint in the above-referenced matter alleging that their personally identifiable information ("PII") and protected health information ("PHI") (PPI and PHI collectively "Private Information") had been disclosed to third-parties as a result of Data Breach that occurred by virtue of the negligence and other failings of Defendant ("Meier Case" or

"this Case"). (Compl. [ECF Doc. 1] ¶¶ 1, 5, 6.) On May 28, 2021, Plaintiff Susan Reichert filed a Class Action Complaint in the United States District Court, District of Minnesota, with allegations against Defendant that were similar to those of Ms. Meier and Ms. Doe, whereupon the case was assigned Court File No. 21-cv-01300 ("Reichert Case"). (Class Action Compl. [ECF Doc. 1 in 21-cv-01300].) On June 9, 2021, Plaintiff Mark Kalling filed a Class Action Complaint in the United States District Court, District of Minnesota, with allegations against Defendant similar to those of Ms. Meier, Ms. Doe, and Ms. Reichert, whereupon the case was assigned Court File No. 21-cv-01368 ("Kalling Case"). (Class Action Compl. [ECF Doc. 1 in 21-cv-01368].) On June 17, 2021, Plaintiff Sherman Moore filed a Class Action Complaint in the United States District Court, District of Minnesota, with allegations against Defendant similar to those of Ms. Meier, Ms. Doe, Ms. Reichert, and Mr. Kalling, whereupon the case was assigned Court File No. 21-cv-11421 ("Moore Case"). (Class Action Compl. [ECF Doc. 1 in 21-cv-11421].)

Plaintiffs Robert Smithburg, Thomas Lindsay and Robin Guertin filed a Summons and Complaint in Minnesota state district court on June 15, 2021 against a number of Defendants, including Netgain ("Smithburg Case"). (State Court Compl., Ex. 1 to Notice of Removal [ECF Doc. 1] in 21-cv-01622.) On July 19, 2021, the Court ordered the Smithburg case to be assigned as part of this Case. (Order of Direction to Clerk of Court [ECF Doc. 33].) On July 28, 2021, Plaintiffs in the Smithburg Case dismissed the defendants in that case other than Netgain. (Notice of Vol. Dismissal [Doc. 18 in 21-cv-01622].)

On August 24, 2021, the Court consolidated the Reichert Case, Kalling Case, Moore Case, and Smithburg Case into this Case, as well as appointing Gayle Blatt, Bryan Bleichner, and Brian Gudmundson as interim-lead counsel, and a number of other attorneys as the Executive Committee [ECF Doc. 34]. On September 23, 2021, Plaintiffs Meier, Doe, Reichert, Kalling, Smithburg, Lindsay, and Guertin, by and through the attorneys that the Court had appointed as class counsel, filed their Consolidated Class Action Complaint [ECF Doc. 35].

On November 8, 2021, Defendant filed a Motion to Dismiss [ECF Doc. 45] with accompanying documents [ECF Docs. 46, 47, 48, and 49]. Following briefing and oral argument, the Court issued a Memorandum Opinion and Order on June 2, 2022 [ECF Doc. 56], granting the motion as to Plaintiffs' causes of action for negligence per se and the Minnesota Health Records Act, but denying Defendant's Motion as to Plaintiffs' causes of action for negligence and declaratory judgment.

Thereafter, Plaintiffs obtained discovery responses from the Defendant and set about to determine the characteristics of the exfiltrated data. (Renz Decl. ¶ 6.)

**D. Negotiations and Settlement**

The parties were set to mediate in the Fall of 2022, but the mediation was postponed at the request of the Defendant. (Renz Decl. ¶ 9.) The parties continued to exchange information on their respective positions on liability, scope of information breached, and financial wherewithal. (*Id*.) In October of 2023, the parties engaged in a remote mediation with Magistrate Judge Jeffrey Keyes but were unable to come to a

resolution.  (*Id.*)  The parties continued to negotiate, including exchanging information through Judge Keyes, and eventually arrived at the Settlement.  (*Id.* ¶ 9.)

## ANALYSIS

## I.  THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR PRELIMINARY APPROVAL.

Parties settling a class action must seek approval of the settlement from the court. Fed. R. Civ. P. 23(e). Rule 23(e) contemplates a sequential process for courts evaluating class action settlements. First, the Court must determine whether a class should be certified for settlement purposes. *Sullivan v. DB Inv., Inc*., 667 F.3d 273, 296 (3d Cir. 2011) (en banc). Second, the Court must consider whether to approve a settlement preliminarily and order that notice be provided to the class. At this preliminary approval stage, the Court determines whether the settlement is within the range of possible approval and whether class members should be notified of the terms of the proposed settlement. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993) (citing *Manual for Complex Litigation,* § 30.44, at 241–42 (2d ed. 1985)). Third, after the class has been notified and has had the opportunity to consider the settlement, the Court must decide whether to grant final approval of the settlement as "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also, e.g.*, *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). This Court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988). The law strongly favors resolving litigation through settlement, particularly in the class action context. *White*, 822 F. Supp. at 1416 ("The policy in federal court favoring the voluntary

resolution of litigation through settlement is particularly strong in the class action context.") (citation omitted).

### A. The Settlement Class Satisfies the Requirements for Class Certification at the Settlement Stage.

Plaintiff has the burden of demonstrating satisfaction with all of the applicable requirements of Rule 23. *In re Monosodium Glutamate Antitrust Litig*., 205 F.R.D. 229, 231 (D. Minn. 2001) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is there be no trial," but must still ensure satisfaction with other Rule 23 requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement Class satisfies each of the requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and of Rule 23(b)(3) (predominance and superiority).

### Rule 23(a) Requirements

First, the Settlement Class satisfies the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation). As an initial matter, the proposed Class consists of approximately two million class members. This far exceeds numerosity's minimum requirements. Rule 23(a)(2)'s commonality requirement mandates that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk*

*Indus.*, *Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). For purposes of Rule 23(a)(2), the Supreme Court has emphasized that "even a single (common) question will do." *Wal-Mart Stores, Inc. v Duke*, 564 U.S. 338, 359 (2011) (internal citation omitted). Here, numerous questions of law and fact will determine Netgain's liability to the Settlement Class. In particular, Plaintiffs' negligence and declaratory judgment claims based on Netgain's implementation and maintenance of inadequate data security measures will be determined by Netgain's actions or inactions, and whether that conduct allowed the Data Breach to occur. Common evidence will dictate the resolution of every Settlement Class member's claim.

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement asks whether plaintiffs' claims "arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory" and "have the same essential characteristics" as the claims of other class members. *See, e.g., De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (11th Cir. 1983). The requirement is undemanding, requiring only some nexus between the named plaintiffs' claims and the common questions uniting the class. *In re Disposable Contact Lens Anti. Lit.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). Here, Plaintiffs' claims are typical of the Settlement Class because they arise from the same event, the Data Breach, and are based on the same legal theories, negligence and declaratory judgment. Further, Plaintiffs' and the Settlement Class members' injuries are all connected to same tortious conduct: Netgain's alleged disregard for the security of

the Class' Private Information. Because all claims arose from the same event, the Data Breach and Netgain's alleged disregard for the security of Plaintiffs' Private Information, Plaintiffs' claims are not atypical. Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing the adequacy requirement, courts utilize "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.,* 258 F.R.D. 545, 555 (N.D. Ga. 2007). Here, Plaintiffs do not have any interests antagonistic to other Settlement Class members and have retained lawyers who are abundantly qualified and experienced in class actions generally, and in data breach cases specifically. Accordingly, the requirement is met.

*Rule 23(b)(3) Requirements*

Second, the proposed Settlement satisfies the requirements of Rule 23(b)(3) (predominance and superiority). After establishing all of Rule 23(a) requirements, plaintiffs seeking certification must show the proposed class satisfies at least one subsection of Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable traits." *Amchem Prods., Inc.*, 521 U.S. at 615.

Here, there are common questions of law and fact pertaining to Plaintiffs' negligence and declaratory judgment claims. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Class Members. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.* ("*Target*"), 309 F.R.D. 482, 486-89 (D. Minn. 2015). All of the issues related to negligence – duty, breach, causation and damages – can be resolved on a class-wide basis. First, there is the legal question affecting all Class Members as to whether Netgain owed a duty to them to take reasonable care in managing and protecting their Private Information. Second, whether Netgain breached that duty by failing to act reasonably in

protecting Private Information and to use adequate systems, procedures, and personnel to prevent the disclosure and theft of the Private Information affects all Class Members. Proximate cause is also a common issue because the Class would uniformly show the relationship between the Data Breach and the failure to appropriately safeguard its systems, resulting in compromised information and ultimately caused Plaintiff and the Class harm. In all, the common issues of duty, breach, and causation overwhelmingly predominate over any remaining individualized issues.

Under Rule 23(b)(3), a court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations omitted). Litigating the same claims of hundreds of thousands of class members and requiring presentation of the same evidence and expert opinions each time is blatantly inefficient. Here, the Data Breach affected millions of people located across the United States. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation and therefore will promote judicial economy and efficiency. Additionally, many Settlement Class members are individuals who suffered small damages. The awards of these Settlement Class members would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, superiority is satisfied.

### B. The Proposed Settlement Is The Result Of Arm's-Length Negotiations Among Experienced Counsel.

Courts attach "[a]n initial presumption of fairness . . . to a class settlement reached in arm's-length negotiations between experienced and capable counsel after meaningful discovery." *Grier v. Chase Manhattan Auto Fin. Co*., No. Civ. A.99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000); *see also Grunin*, 513 F.2d at 123; *White v. Nat'l Football League*, 836 F. Supp. 1458, 1476-77 (D. Minn. 1993). "The court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Benefit Plans Sec. Litig*., Civ. No. 3-92-708, 1993 WL 330595, *5 (D. Minn. June 2, 1993) (citation omitted); *see also Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987) (affording "great weight" to opinions of experienced counsel). Indeed, courts consistently find that the terms of a settlement are appropriate where the parties, represented by experienced counsel, have engaged in extensive negotiation at an appropriate stage in the litigation and can properly evaluate the strengths and weaknesses of the case and the propriety of the settlement. *See, e.g.*, *In re Employee Benefit Plans Sec. Litig*., 1993 WL 330595, at *5 (noting that "intensive and contentious negotiations likely result in meritorious settlements . . . ."); *In re Zurn Pex Plumbing Prods. Liab. Litig*., No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (observing that "[s]ettlement agreements are presumptively valid, particularly where a 'settlement has been negotiated at arm's length, discovery is sufficient, [and] the settlement proponents are experienced in similar matters . . . .' ") (citation omitted).

Here, Plaintiffs and Netgain have had ample opportunity to test and refine their legal theories through investigation, research, discovery, as well as a fully briefed, argued, and decided motion to dismiss, to assess the merits of Plaintiffs' claims and Netgain's defenses, and to balance the potential value of Settlement Class members' claims against prior settlements and the substantial risks and expense of trial and ultimate collectability of Netgain.

Settlement negotiations over the course of the litigation were conducted under the supervision of United States Magistrate Jeffrey Keyes (ret.), who facilitated arms-length negotiations at a mediation. (Renz Decl. ¶¶ 9-11.)  The parties exchanged discovery, documents, and information to help them facilitate informed arm's length negotiations and productive settlement discussions.  (*Id.* ¶¶ 6, 11.)  Plaintiffs faced significant risks and challenges in continued litigation, as well as concerns about Netgain's financial condition.  (*Id.* ¶¶ 8, 9.).  Settlement Class Counsel recommends, for the Court's consideration, preliminary approval of the Settlement because it is well within the range of possible approval and is fair, reasonable and adequate and in the best interests of the Settlement Class, particularly considering the difficulty in working with the data as it exists today and the collectability of a judgment against Defendant. (*Id.* ¶ 15.)

When, as here, the parties are represented by experienced counsel and rigorous negotiations were conducted at arm's length, the judgment of the litigants and their counsel concerning the adequacy of the Settlement may and should be considered.  The extent of the negotiations conducted by Settlement Class Counsel and Netgain's Counsel, Settlement Class Counsel's experience litigating complex class actions, the arm's-length

nature of the settlement negotiations, and the fact that many of the negotiations were overseen by Magistrate Judge Keyes (ret.), all weigh in favor of preliminary approval of the Settlement.

### C. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

At the preliminary approval stage, "the fair, reasonable and adequate standard is lowered, with emphasis only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (citation omitted). Courts consider four factors in determining whether a proposed settlement is fair, reasonable and adequate for purposes of final *approval:* (1) the merits of plaintiffs' case weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.[4] *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005) (citing *Grunin*, 513 F.2d at 124); *Van Horn*, 840 F.2d at 607; *see also Dryer v. Nat'l Football League*, Civ. No. 09-2182 (PAM/AJB), 2013 WL 5888231, at *2 (D. Minn. 2013). Thus, at this stage, the Court's task is to determine whether the settlement is in the range of possibly meeting these factors.

In the present case, the Settlement reflects both the strengths and weaknesses of the parties' claims and defenses. The fact that Settlement Class members will receive cash relief across broad categories of damages reflects the strength of Plaintiffs' liability

---

[4] Courts do not consider this factor until notice has been given to Settlement Class members. *See, e.g.*, *Columbus Drywall Insulation, Inc. v. Masco Corp*., 258 F.R.D. 545, 560 (N.D. Ga. 2007).

case. The Settlement provides significant benefits to the Settlement Class. The $1,900,000.00 Settlement Fund will be distributed pursuant to a fair Distribution Plan set forth in the Settlement and described above. The distribution process will use simple claim forms and a submission process that is administered by an experienced Settlement Administrator. No portion of the $1,900,000.00 Settlement Fund will revert to Netgain.

There is limited concern that Netgain will be unable to pay the full amount of the Settlement Fund. In addition, the complexity and expense of further litigation loom quite large in this case. The sheer number of members of the Settlement Class and expert-driven proof required at trial and preceding trial, are likely to create considerable expense were this case to continue to be litigated. (Renz Decl. ¶ 8.) Preparing for a contested trial would involve considerable expense. (*Id.*) For these reasons, Settlement Class Counsel urge the Court to find that the proposed Settlement is within the range of reasonableness warranting notice to Class Members and should be preliminarily approved.

### D. The Proposed Form and Manner of Notice Are Appropriate.

Under Rule 23(e), Class Members are entitled to reasonable notice of the proposed Settlement. *See* Manual for Complex Litig. §§ 21.312, 21.631 (4th ed. 2011). Settlement notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process."

*Id.* (quoting *Grunin*, 513 F.2d at 121). Notice need not provide "a complete source of information" or an exact amount of recovery for each class member. *Id.* (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995)). The best notice practicable under the circumstances means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176.

Counsel for the Settlement Class have hired a highly experienced and well-regarded class action notice and administration firm, CPT. (Renz Decl., ¶ 4; *see also* Green Decl. ¶¶ 5-7.)

Julie N. Green is the Senior Vice President of Operations of CPT, and has over 19 years of experience in class action settlement administration for CPT. (Green Decl. ¶ 4.) In her opinion, the Notice Plan detailed in Distribution Plan is consistent with other class action plans that have been approved by state and federal courts nationwide and will provide "the best notice practicable given the circumstances" and is expected "to reach approximately 80% of the target audience." (*Id.* ¶¶ 23, 28.)

Plaintiffs respectfully submit that the multifaceted, comprehensive notice plan developed by the Settlement Administrator provides the best notice practicable under the facts and circumstances of this case and fully satisfies due process requirements. Settlement Class Counsel requests that the Court approve the proposed form and manner of notice to the Settlement Class as set forth in the Notice Plan.

**E. The Request for a Service Award for the Proposed Settlement Class Representatives Is Fair and Reasonable.**

Settlement Class Counsel respectfully requests that the Court approve a statement—to be included in the Long Form Notice to the Settlement Class—that Class Counsel will request the payment of a service award to the Settlement Class Representative in recognition of their service as Class Representatives in this litigation. (Renz Decl., Exh. A ¶ 9.1.) Settlement Class Counsel will request up to a $1,500 service award to each of the named Plaintiffs whose service to the Class included providing numerous documents, consulting with counsel pre-litigation, being available during the mediation and negotiation processes, and approving the ultimate settlement reached. (*Id.*)

Courts recognize the purpose and appropriateness of service awards to class representatives. *See*, *e.g.*, *In re: Target Corp. Customer Data Sec. Breach Litig.,* MDL No. 14-2522 (PAM/JJK) (approving $20,000 service award to each of five financial institutions class representatives, noting that the service awards were "reasonable"); *White*, 822 F. Supp.at 1406 (noting that "[c]ourts . . . routinely approve such awards for class representatives who expend special efforts that redound to the benefit of absent class members," and collecting cases). "Courts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). "Courts in this Circuit regularly grant service awards of $10,000 or greater." *Id*.

The proposed Settlement Class Representatives could have simply awaited the outcome of this litigation and may have received the same benefits as any other Settlement Class Member. However, if no one had done so, there would be no benefits whatsoever. Instead, they stepped up to lead this litigation and represent the interests of all Class members. They remained committed to and actively participated in this litigation against a formidable defendant on behalf of a large group of class members. A service payment for the proposed Settlement Class Representative is appropriate.

### F. Class Settlement Counsel Will Seek a Reasonable Amount of Attorneys' Fees and Costs.

Class Settlement Counsel intend to move the Court, 35 days prior to the Final Approval Hearing, for Attorneys' Fees and Costs.  Class Settlement Counsel currently has fees and costs of $1,837,043.02.  (Renz Decl. ¶ 14.)  At this time, Class Settlement Counsel anticipates seeking an award of fees and costs of $570,000.00, which results in a negative × .31 multiplier.  (*Id.* ¶ 14.)  Moreover, the Settlement includes injunctive relief (Renz Decl., Exh. A ¶¶ 2.1—2.3), which provides even further bases for the anticipated request for fees and costs.

Class Settlement Counsel's fee request is well within the range of reasonableness for Settlements of this nature and size.  *See*, *e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (awarding attorney fees of 36% from a $3.5 million common fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (observing that "courts have frequently awarded attorneys' fees ranging up to 36% in class action" and affirming award of 38% of the net settlement fund); *Phillips v. Caliber Home Loans, Inc.*, No. 19-

CV-2711, 2022 WL 832085, at *7 (D. Minn. Mar. 21, 2022) (awarding one-third of $5,000,000 non-reversionary common fund).

## CONCLUSION

For these reasons, Class Settlement Counsel respectfully ask the Court to enter an Order: (1) certifying the Settlement Class for purposes of settlement; (2) appointing Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay and Robin Guertin as representatives of the Settlement Class; (3) appointing the undersigned counsel as Settlement Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Settlement Class; (6) directing that the notice to the Settlement Class be disseminated by Settlement Administrator, CPT, in the manner described in the Settlement and in the Declaration of Julie Green; (7) establishing a deadline for Settlement Class members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the final fairness hearing.

**CHESTNUT CAMBRONNE PA**

Dated:  May 9, 2025                    By:   *s/ Christopher P. Renz*
                                        Bryan L. Bleichner (#0326689)
                                        Jeffrey D. Bores (#227699)
                                        Christopher P. Renz (#0313415)
                                        100 Washington Avenue S, Suite 1700
                                        Minneapolis, MN 55401
                                        Telephone: (612) 339-7300
                                        bbleichner@chestnutcambronne.com
                                        jbores@chestnutcambronne.com
                                        crenz@chestnutcambronne.com

Gayle M. Blatt (*pro hac vice*)
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Phone: (619) 238-1811
gmb@cglaw.com

Brian C. Gudmundson (#336695)
Michael L. Laird (#398436)
Rachel K. Tack (#399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

***Interim Co-Lead Counsel***

22

Kate M. Baxter-Kauf (#0392037)
Karen Hanson Riebel (#0219770)
Maureen Kane Berg (#033344X)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
kmbaxter-kauf@locklaw.com
khriebel@locklaw.com
mkberg@locklaw.com

*Chair of the Interim Executive Committee*

Nathan D. Prosser (#0329745)
Anne T. Regan (#0333852)
**Hellmuth & Johnson PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
nprosser@hjlawfirm.com
aregan@hjlawfirm.com

Terence R. Coates (*pro hac vice* anticipated)
Justin Walker (*pro hac vice* anticipated)
**Markovits, Stock & DeMarco, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com

Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
David A. Goodwin (#386715)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
dgoodwin@gustafsongluek.com

Nicholas A. Migliaccio (*pro hac vice*
    anticipated)
Jason S. Rathod (*pro hac vice* anticipated)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Raina C. Borrelli (#392127)
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

***Interim Executive Committee***