UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: NETGAIN TECHNOLOGY, LLC, CONSUMER DATA BREACH LITIGATION | Court File No. 21-cv-1210 (SRN/LIB) |

DECLARATION OF JULIE N. GREEN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN

I, Julie N. Green, declare and state as follows:

1. I am the Senior Vice President of Operations, Class Action Services of CPT Group, Inc. ("Settlement Administrator" or "CPT"). The following statements are based on my personal knowledge, the information provided to me by Counsel for the parties and other CPT employees working on this matter, and records of CPT generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently thereto.

2. For this matter, CPT is able and willing to provide Notice and Claims Administration services as provided in the Settlement Agreement and Release ("Settlement Agreement"), if the parties' motion is approved by the court.

3. CPT is located at 50 Corporate Park, Irvine, CA 92606.

4. I have been employed by CPT for 19 years, managing the operations department and supervising multiple notice and claims administration programs. As Senior Vice President of Operations, I am responsible for the oversight, supervision, and evaluation of all departments and positions related to the administration of class action

1

matters to ensure superior quality and successful execution of each component required to complete the settlement process. In my career at CPT, I have been responsible for the design and/or implementation of hundreds of class action administration plans. I submit this declaration at the request of Counsel in support of the Motion for Preliminarily Approval of Class Action Settlement

## **CPT'S EXPERIENCE RELEVANT TO THIS CASE**

5.      CPT is a leader in the settlement administration industry and has extensive experience in providing court approved notice of class actions and administering diverse types of notice programs and settlements, including specifically those of the type provided for and made in data breach litigation. In the past 30-plus years, we have provided notification and/or claims administration services in thousands of class action cases. Some of our recent multi-state representative matters include *Hinds v. Community Medical Centers, Inc.,* Case No. STK-CV-UNPI-2021-0010404 (Sup. Ct. Cal. Cnty of San Joaquin); *Young v. Good Samaritan Hospital*, Case No. 20STCV30421 (Sup. Ct. Cal. Cnty of Los Angeles); *Heath et al. v. Steel River Systems, LLC*., Case No. 2023-LA-000006 (IL, 14th Jud. Cir. for Whiteside Cnty., Chanc. Div); *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx) (C.D. Cal); *In Re Southern Ohio Health Systems Data Breach Litigation*, Case No. A2101886 (CT. Com. Pl. Hamilton Cnty., OH); *Bokelman v. FCH Enterprises, Inc.,* Case No. 18-cv-00209-RJB-RLP (D. Haw); *Christofferson v Creation Entertainment, Inc.* Case No. 19STCV11000 (Sup. Ct. Cal. Cnty of Los Angeles); *Hartranft, et al. v. TVI, Inc. d/b/a/ Savers, Inc., Apogee Retail, LLC*, Case No. 8:15-cv-01081 CJC-DFM (C.D. Cal.); *Lim, et al. v. Vendini, Inc.,* Case No. 1-14-CV-259897 (Sup. Ct. Cal. Cnty of Santa Clara); *Thompson v. 1-800 Contacts, Inc., Vision Direct, Inc., Walgreens Boots Alliance, Inc., Walgreen Co., Arlington Contact Lens Service, Inc., National Vision, Inc., Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.)*, Case No. 2:16-cv-01183 (D. Utah); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D. Cal); *Jacobo, et al., v. Ross Stores, Inc.*, Case No. 2:15-cv-04701-MWF-AGRx (C.D. Cal); *Livingston v. MiTAC Digital Corporation*, Case No. 3:18-cv-

05993-JST (N.D. Cal); and *Gold, et al. v. Lumber Liquidators, Inc.,* Case No. 3:14-cv-05373-RS (N.D. Cal.). Some of our single-state representative matters include *V.C. et al. v. Salinas Valley Memorial Healthcare System*, Case No. 20-cv-001923 (Sup. Ct. Cal. Cnty of Monterey); *Krinsk, et al. v Monster Beverage Corporation, et al*, Case No. 37-2014-00020192-CU-BT-CTL (Sup. Ct. Cal. Cnty of San Diego); *Kerr v. The New York Times Co.*, et al., Case No. 37-2016-000010125-CU-MC-CTL (Sup. Ct. Cal. Cnty of San Diego); and *Mount v. Wells Fargo Bank*, Case No. BC395959 (Sup. Ct. Cal. Cnty of Los Angeles).

6. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume ("CPT CV") is attached as **Exhibit A**, which provides detailed information concerning our class action claims administration qualifications, experience, as well as our Information Security Statement that details CPT's procedures for the protection of confidential class member information.

7. Due to the sensitive nature of settlement administration, CPT follows a series of strict protocols to protect the integrity of our work that include, but are not limited to, the following: employing security controls and procedures throughout our business that comply with AICPA SOC 2 Type II; requiring of secure file transfer of all Class Member data, account and wire information; multifactor authentication to secure all email accounts; monitoring each endpoint with modern Data Loss Prevention ("DLP") software; implementation of strict policy regarding the transmittal and storage of SI; requiring staff to complete regular cyber security training; monthly external and internal vulnerability scans to ensure the integrity of our security measures. To protect against potential losses, CPT holds $5,000,000 in Errors and Omissions insurance, $1,000,000 in Crime/Fidelity insurance, and $5,000,000 in cyber insurance.

## NOTICE AND ADMINISTRATION OVERVIEW

8. CPT was selected by the parties in the above captioned matter to provide administration services for this settlement. CPT has regularly been approved by both

federal and state courts throughout the United States to provide notice and claim processing services and handles all aspects related to the implementation of class action settlements, including but not limited to: (a) issuing all types of legal notice by way of direct mail, email notification, and supplemental media including, but not limited to, print publication, digital display, television, radio, informational press release, paid search, and social media advertisement; (b) establishing dedicated URLs and case websites with online claim filing capabilities; (c) providing call support through a dedicated toll-free number with interactive voice response (IVR); (d) providing electronic and hard copy claims processing; (e) receiving/processing other communications about the settlement; (f) providing secure data management and reporting; (g) distributing paper and digital payment through physical check, gift card, mobile wallet, merchandise credits, direct deposit and other means; (h) providing Qualified Settlement Fund reporting and banking services; (i) filing applicable tax returns; (j) filing any required reports with the court; and (k) handling other tasks related to the administration of class action settlements that may be requested by the parties or court.

## **CASE BACKGROUND**

9. CPT understands that the Class and Settlement Class are defined as follows:

All natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their Personal Information may have been compromised in the Attacks.

Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any entity in which Netgain or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

10. Pursuant to information provided from counsel, CPT understands there to be approximately 2,196,000 individuals in the proposed Settlement Class, however contact

information is not obtainable, meaning direct notice is not an option. CPT will therefore target the Settlement Class Members and attempt to reach them through alternative noticing efforts, as further described below. The objective of the following Notice Program is to provide adequate notice of the settlement to all potential members of the Settlement Class as defined above in paragraph 9.

## IDENTIFICATION OF TARGET AUDIENCE
## UNKNOWN CLASS MEMBERS

11. To establish the target audience and determine the media consumption and habits of the affected consumer, CPT used MRI-Simmons "MRI"[1] and other research and analytic tools based on a nationwide audience hypertargeting in Washington, Oregon, California, Minnesota, Texas, Missouri, South Carolina, Georgia, Ohio, Nevada, and Alabama. These states were chosen based on the specified locations of companies involved in the data breach. While class members are located nationwide, hyper-targeting specific cities increases the likelihood of reaching potential class members.

12. Audiences were developed using targeting related to interests in the businesses that were involved in the data breach. Geo-targeting was layered within audiences to hyper-target states with affected businesses. An additional audience was added to further target cities where the businesses are located and reach potential class members.

---

[1] CPT frequently uses and relies on MRI data and based on our experience and MRI's reputation in the industry, considers it a reliable source. MRI describes its data as follows, and CPT agrees with this description: "MRI's Survey of the American Consumer® is the largest and most authoritative study of adult consumers in the United States. No other organization, not even the U.S. Census Bureau, can tell you more about Americans as consumers. All information collected in the Survey comes from a single set of respondents, ensuring data integrity and reliability. MRI interviews approximately 24,000 consumers every year in towns, cities, and counties across the contiguous 48 states. Crucial to the Survey's success is the relationship MRI develops with respondents. Interviews are conducted in consumers' homes, face-to-face, and followed up with a comprehensive self-administered survey. In a national probability study such as the Survey of the American Consumer, the higher the response rate, the more reliable the data. MRI's highly trained interviewers consistently generate the highest response rates in the industry". (GfK US MRI, LLC. D/B/A MRI-Simmons, 2019, p.1/para.1)

13. To identify the best media channels to serve notice to the target audience, CPT reviewed the media quintiles, which measure the degree to which the target audience used media relative to the general population. The courts and advertising industry accept this methodology to select the appropriate media channels that will best reach the target audience. By leveraging MRI data, it aids in understanding the target audience and their consumer attitudes, behaviors, demographics, psychographics, and media data. Media consumption data indicated a high consumption of Google, Facebook, YouTube, and Instagram.

## DIGITAL NOTICE PROGRAM

14. The proposed notification plan was developed and customized to reach and inform individuals potentially affected by this settlement. CPT will stay fully immersed in the notice process continuously monitoring and optimizing towards the highest performing areas, media channels, and audiences. CPT will run two creative options both in English and Spanish[2] on digital media channels where each design was created with the goal in mind to reach the target audience and bring awareness to the settlement. Mid-point through the notice period, we will modify the creatives to include a reminder statement that the claims deadline is approaching. The proposed notice plan includes the following components:

15. **Programmatic Display:** CPT and its strategic partner will implement a digital banner advertising campaign through a DSP (accessible via desktop and mobile devices) utilizing user interests, demographics, behaviors, and affinity audiences to serve ads on contextually relevant sites and apps to the target audiences. Display ads will run as a rotating display and drive users to the landing page. Programmatic display is included due to the available audiences related to specific business practice areas that were affected by the data breach. Display allows for broader reach across both website and in-app placements where targeting is based on user engagement history and activity.

---

[2] In geographical areas with a high concentration of Spanish speakers who prefer using the internet in either Spanish only or mostly Spanish, for example, states such as California, Texas, Arizona, Florida, New Mexico, etc.….

16. **Social Media:** CPT will deliver advertisements through Facebook and Instagram Ad Exchange platforms. These social media channels have some of the most sophisticated and accurate audience targeting capabilities available. Ads will appear on a rotating basis with other advertising campaigns as a Sponsored Ad. CPT will run a nationwide campaign, with a focus on selected states and will optimize toward the highest performing areas and audiences. Additionally, CPT will run a retargeting campaign that will target people who have visited the website but have not completed an action such as a form-fill or call, among others.

17. **Online Video (OLV):** Online video, such as YouTube, CTV, and OTT platforms now have a comparable reach to traditional television. Leveraging audience targeting capabilities to serve ads on contextually relevant videos and channels is necessary in today's competitive landscape. CPT can serve ads on a variety of platforms and use targeting to push audiences through the top of the marketing funnel. YouTube was added to reach a greater number of potential class members across additional platforms outside of social and display.

18. **Paid Search:** To further increase the campaign's effectiveness and help potential class members locate the settlement website, CPT will purchase sponsored links on Google AdWords and Bing Ads. When a user searches a relevant keyword, the text ad will have the opportunity to appear on a rotating basis with other advertising campaigns as a Sponsored Ad. Keywords will be determined by CPT and together with Counsel and may include such terms as Netgain Data Breach, Meier, Meier v Netgain, Netgain Class Action Lawsuit, among others.

19. **Informational Press Release:** To bolster the digital notice campaign efforts and provide notice to potential class members, CPT will disseminate a press release on PR Newswire US1 National Newsline and National Hispanic Newsline. The press release should draw media attention and gain additional publicity as the release will contain sufficient information for any interested news organization or authors to write a news story. A press release helps bring awareness to the settlement and generates additional media

coverage for a low cost. The release will highlight the toll-free number and settlement website.

20. **Website**: CPT will establish and administer a dedicated settlement website with a case-specific URL www.netgainclassactionsettlement.com. The site will be informative and easy for potential members of the Settlement Class to navigate. The website will be optimized for mobile users and maximize search engine optimization through keywords and metadata to increase search engine rankings. The settlement website will include links to the Settlement Agreement, Preliminary Approval Order, Claim Form, Long Form Notice, "FAQs", applicable deadlines, all papers filed in support of the proposed settlement, orders of the Court pertaining to this settlement, and contact information for the Settlement Administrator, including a toll-free support line, e-mail address, and U.S. mailing address. In addition, the website will provide the information necessary to file a claim form electronically. The website address or a hyperlink will also be displayed on all notification formats described in this declaration.

21. **Class Member Support**: CPT will establish a dedicated 24-hour, toll-free support line with Interactive Voice Response ("IVR") capabilities to provide potential members of the Settlement Class with: (a) general and detailed information about the Action; (b) answers to frequently asked questions; and (c) information relating to filing a claim form or opt out. In addition, CPT will maintain a dedicated email inbox for handling inquiries from potential Settlement Class members and claimants.

22. Based on the information provided by Counsel and the terms of the parties' Settlement Agreement, CPT believes this notice program will provide reasonable, fair, and adequate notice and constitutes the best notification plan under the circumstances of this case. According to the Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, "a reasonable reach is between 70-95% with a median reach on approved notice plans at 87%." With Counsel's guidance, CPT's goal is to reach approximately 80% of the Target Audience with a frequency of 2.5-3X over 45-days, via a combined effort of all media tactics stated above.

23. It is CPT's experience that the notification plan as outlined within this declaration is consistent with other class action notice plans that have been approved by both state and federal courts nationwide, including *Bokelman v. FCH Enterprises, Inc.,* Case No. 18-cv-00209-RJB-RLP (D. Haw); *Christofferson v Creation Entertainment, Inc.* Case No. 19STCV11000 (Sup. Ct. Cal. Cnty of Los Angeles); *Williamson v. Curaleaf, Inc.*, Case No. 3:22-cv-00782-IM (D. Or.); *Long, et al v. Safeway, Inc.,* Case No. 19CV4542 (MCCC, OR); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D. Cal); *Jacobo, et al., v. Ross Stores, Inc.*, Case No. 2:15-cv-04701-MWF-AGRx (C.D. Cal.); *Smith v. ANI*, Case No. 2:18-CV-04004-MDH (W.D. MO).

## NOTIFICATION TIMELINE

24. CPT will implement the Notice Plan as set forth in the following timeline:

| Item Description | Date |
|---|---|
| Commencement of 45-day digital advertising campaign, settlement website, and IVR/Toll-Free hotline. | 30 calendar days of entry of Order Granting Preliminary Approval |
| Notice campaign complete. | 45 days after commencement. |

## CLAIMS, OBJECTIONS AND REQUESTS FOR EXCLUSION

25. CPT understands that Class Members can make a claim by completing the claim form and submitting it by mail to CPT at the address shown in the Notice or by submitting it online via the settlement website. In accordance with the terms of the parties' Settlement Agreement, CPT will review all claim forms and supporting documents submitted and confirm that they are valid, submitted by a qualifying class member, and that all necessary information has been provided to support the claim.

26. CPT also understands that Objections and Exclusion Requests (Opt-Outs) must be served in writing as instructed in the Notice. CPT will maintain a record of and

inform the parties of all Opt-Out requests submitted by Settlement Class Members, as well as any Objections CPT may receive.

### ADMINISTRATION FEES

27. CPT estimates its costs for the notice and administration of this Settlement will be $425,000 based on 2,196,000 class members and a valid claim filing rate of 5%.

### CONCLUSION

28. The Notice Plan described herein is consistent with similar effective, court-approved notice programs and will provide the best notice practicable given the circumstances. CPT expects to reach approximately 80% of the target audience through a robust notice campaign using various media tactics efforts, including digital display advertisement, social media advertisement, paid search, and a press release. Based on our experience with similar cases, this notice program is designed to provide the Settlement Class members with notice of their legal rights and comports with due process requirements.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 30, 2025, at Irvine, California.

*Julie N. Green* (signature)
JULIE N. GREEN