**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| | Court File No. 21-cv-1210 (SRN/LIB) |
| *IN RE: NETGAIN TECHNOLOGY, LLC, CONSUMER DATA BREACH LITIGATION* | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## I.   INTRODUCTION

Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay, and Robin Guertin (collectively, "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and all other similarly situated persons (the "Class" or "Class Members"), respectfully submit this memorandum in support of their motion pursuant to Federal Rule of Civil Procedure 23(e) and the settlement agreement (Declaration of Kate M. Baxter-Kauf ("Baxter-Kauf Decl."), Ex. A (the "SA," "Settlement" or "Settlement Agreement")) between Plaintiffs and Netgain Technology, LLC ("Netgain" or "Defendant") for final approval of the proposed Settlement with Netgain, and confirmation of the Settlement Agreement as approved by the Court in its Preliminary Approval Order dated May 19, 2025, Dkt. No. 131 (the "Preliminary Approval Order" or "Preliminary Approval Order").

In the Preliminary Approval Order, the Court provisionally certified a class for the purpose of settlement (the "Settlement Class"), appointed the Named Plaintiffs as class

representatives, appointed settlement class counsel,[1] preliminarily approved the Settlement, set a final hearing to assess the fairness of the settlement (the "Final Approval Hearing"), appointed an administrator or the settlement, and approved a plan to notify the Class of the Settlement. The Court directed that notice of the Settlement (the "Notice") be published to members of the Class informing them of the terms of the proposed Settlement. With Notice complete, Named Plaintiffs move for final certification of the Settlement Class and approval of the Settlement.

## II.   FACTUAL BACKGROUND

### A.   The Litigation

Netgain is a "service provider" which externally manages IT and cloud computing services for companies primarily in the healthcare and accounting industries. (SA at 2.) Netgain provides a variety of IT-related services to clients, including cloud computing, technical infrastructure, IT management, and service and application management. (*Id.*) In September and November 2020, criminals illegally accessed information stored by certain customers on Netgain servers (the "Breach"). (*Id.*) In early 2021, Netgain began notifying clients of the Breach. (*Id.* ¶ 2.)

As a result of the Breach, personal information of nearly 2 million individuals who are customers of Netgain's clients, was exfiltrated by the hackers. This information

---

[1] The attorneys appointed as Settlement Class Counsel are Gayle Blatt, Christopher Renz, and Brian Gudmundson; they are referred to collectively herein as "Class Counsel." Undersigned counsel was previously appointed as chair of the Interim Executive Committee in the Court's Order consolidating the case and appointing interim counsel. *See* Ord., Dkt. No. 34 at 11 ¶ 14.

includes names, email addresses, phone numbers, home addresses, dates of birth, social security numbers, drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information (collectively the "Personal Information" or "PII"). All of the above information, either on its own or with other information, can be used to identify, locate, contact, or impersonate the customers of Netgain's clients.

In the summer of 2021, several Named Plaintiffs—customers of Netgain's clients—filed separate lawsuits and later filed a joint motion to consolidate the cases, which the Court granted on August 24, 2021. *In re: Netgain Technology, LLC Consumer Data Breach Litigation*, Case No. 0:21-cv-1210 (D. Minn. Aug. 24, 2021), Dkt. No. 34. Plaintiffs then filed an amended complaint, consolidating their claims. Consolidated Class Action Compl., Dkt. No. 35. Plaintiffs' Consolidated Class Action Complaint asserts claims for negligence, negligence *per se*, violations of the California Consumer Privacy Act, violations of the California Unfair Competition Law, violations of the Minnesota Health Records Act ("MHRA"), and for declaratory relief, and seeks remedies including damages and injunctive relief for the impact and harm they allege was caused by the Breach.

Defendant filed a motion to dismiss arguing Plaintiffs lacked Article III standing and failed to state claims for negligence, negligence *per se*, violation of the MHRA, and declaratory and injunctive relief. Def.'s Mot. to Dismiss, Dkt. No. 45. The Court granted the motion in part and denied the motion in part. *In re: Netgain*, Case No. 0:21-cv-1210 (D. Minn. Aug. 24, 2021), Dkt. No. 56. The Court dismissed Plaintiffs' negligence *per se*

and MHRA claims. *Id.* Defendant then filed an answer, the parties commenced discovery, and Plaintiffs obtained and reviewed discovery responses and other information from the Defendant. With this, Plaintiffs were able to analyze the type of data stolen, the impact of the breach, and the size of the class.

### B.      Negotiations

The Parties engaged in mediated settlement negotiations on November 15, 2022; October 27, 2023; November 14, 2023; November 21, 2023; and December 6, 2023, all before the Honorable Jeffrey J. Keyes (Ret.) of Keyes ADR. (Baxter-Kauf Decl. ¶ 3.) These sessions did not culminate in a settlement but nevertheless allowed the parties to narrow the issues barring settlement. (*Id.*) The Parties did not give up—after numerous hours of additional and hard-fought negotiations, the Parties were able to finalize a Settlement Agreement. (*Id.*)

Class Counsel, on behalf of Named Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and Netgain's potential defenses, and the financial condition of Netgain as a company, by conducting independent investigation and confirmatory discovery, conferring with defense counsel through the settlement negotiation process, as well as assessing the merits of expected arguments and defenses throughout the litigation. (Baxter-Kauf Decl. ¶ 4.) Class Counsel thoroughly: analyzed the facts and the law applicable to Plaintiffs' claims in the Action; took into account the burden, expense, and delay of continued litigation; assessed the risks and uncertainties associated with litigating class certification and other defenses Netgain may assert, as well as a protracted trial and

appeal(s); considered Netgain's financial condition and ability to withstand a large verdict; considered the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class. (*Id.*) Based on those considerations, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits as expediently as possible. (*Id.*)

### C.    The Terms of the Settlement

The Settlement defines the Settlement Class as:

> all natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their Personal Information may have been compromised in the Attacks.

> Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any entity in which Netgain or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

(SA at 7-8.) Under the Settlement, Defendant agrees to pay a total of $1,900,000 into a non-reversionary fund that cannot be reclaimed by Defendant (the "Settlement Fund"). (*Id.* at 8.)

One primary driver of this settlement is Defendant's financial state as represented by Netgain's attorneys. (SA at 3, 10-11.) Plaintiffs were provided with access to financial information from Netgain to assess the veracity of these claims. (SA at 10.)

Each Class Member was able to submit a claim for a documented monetary loss incurred by the Class Member as defined in the Settlement (a "Documented Loss"), for

time spent in a manner defined in the Settlement Agreement ("Lost Time"), or for a cash payment. (SA at 11.) A Class Member was able to claim either the cash payment or reimbursement (for a Documented Loss and/or Lost Time). (*Id.*) The maximum amount a Class Member can recover for Documented Loss and Lost Time is $5,000.00. (*Id.*) After claims for Documented Losses and Lost Time (if approved by the Administrator) are calculated, the remaining amount of money in the Settlement Fund will be distributed *pro rata* to the Settlement Class Members who made claims for cash payments. (*Id.*)

Defendant also agreed to injunctive relief for a period of three years after the effective date of the Settlement. (SA at 9.) This agreement requires Netgain to adopt, continue, or implement the following: upgrading firewalls, routing through secured gateways, geo-blocking, ensuring its network is configured in a secure and scaleable manner, deploying virus prevention technology across Netgain's data environment, utilizing multi-factor authentication in hosting environments, and backing up data protection. (*Id.*) The Settlement provides Class Counsel the ability to ensure Netgain is employing these measures during the three years after the effective date. (*Id.*)

In exchange for the benefits conferred to the Settlement Class Members, the Named Plaintiffs and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to release Netgain from claims arising from or related to the Data Breach. (SA at 15.)

### D.    Preliminary Approval

Pursuant to the Settlement Agreement (SA at 15) and Rule 23(e), Plaintiffs and Defendant sought preliminary approval of the Settlement before notifying the absent Class

Members of the agreement. The Parties selected CPT Group, Inc. as the settlement administrator ("CPT" or the "Administrator") to manage the settlement notice and claims process. (SA at 16-20 & Baxter-Kauf Decl. ¶ 7.) The Court granted preliminary approval and selection of CPT as the Administrator on May 9, 2025. *In re: Netgain*, Case No. 0:21-cv-1210 (D. Minn. May 19, 2025), Dkt. No. 131.

### E.      Notice Has Been Completed

Pursuant to the Court's Preliminary Approval Order, the Administrator has completed the Notice program directed by the Court. (Declaration of Jennifer Forst ("CPT Decl.") ¶ 16.) This includes a 45-day media campaign across multiple media channels, social media, and news platforms, which targeted characteristics of the Class. (*Id*. ¶¶ 12-13.) On or about June 19, 2025, the Administrator began the media campaign. (*Id*.) This campaign included programmatic displays which appears on desktops and mobile devices accessing relevant websites and apps, social media ads (through Facebook and Instagram), online video ads, paid sponsored search results, an informational press release, and a website. (*Id*. ¶¶ 6-13) The Administrator maintained these ads and also established a toll-free phone number for viewers to contact and obtain more information. (*Id*.)  The Administrator believes these methods have adequately notified the Class Members of the settlement. (*Id*. ¶¶ 16-17.) To date, the Administrator has received 704,440 total responses. (*Id*. ¶ 17.)

7

Because of the high number of Claims, the Administrator used a service called ClaimScore[2] to evaluate the initial claims, and so far has analyzed 599,064 claim submissions. (*Id.* ¶ 19.) ClaimScore analyzes each claim and begins by assigning each claim a score of 1,000. (*Id.*) Its algorithm then deducts amounts from this maximum for any indicators of fraud by comparing the information in each claim against other information available through its database. (*Id.*) These red flags include different or unknown addresses, phone numbers, email addresses, etc. (*Id.*) When this score is reduced below 700 (the number recommended by ClaimScore as the demarcation for presumptively fraudulent claims based on ClaimScore's own experience in validating claims), the claims are deemed invalid. (*Id.*) This number is not arbitrary—scores under this number have a 99.9% likelihood of being invalid, while those above this number have a 99.9% likelihood of being valid claims. This threshold is a definite point built into the ClaimScore algorithm. Below the 700 threshold, patterns of fraudulent domains, invalid emails, and synthetic identities emerge. Further, the claims closest to 700, but below, are subject to additional criteria and source checking to ensure they are properly below the threshold. CPT also provides the claim information for claimants to its financial vendor in charge of payment, and the vendor also performs a fraud verification. (*Id.*) CPT sets aside a reserve amount of

---

[2] ClaimScore has been utilized in a number of federal and state court cases. CPT Decl. ¶ 19; *see also Nixon v. Grande Cosmetics, et. al*, Case No. 1:22-cv-06639 (D.N.J.), Fairness Hrg. Tr., Dkt. No. 73 at 12:2-12:6 (The Honorable Bumb stating at a fairness hearing "the Court is satisfied that Angeion's fraud election software and its hiring of a third-party vendor, ClaimScore, to analyze potentially fraudulent activity were adequate safeguards to mitigate the risk of mistaken or fraudulent claims.").

the Settlement Fund based on the number of valid claims they receive to ensure that late claimants are also given awards.

Of the completely reviewed claimants, the responses included 64 verified claims for out-of-pocket expenses, 929 valid claims for lost time, and 3,050 valid claims for alternative cash payments. (CPT Decl. ¶ 19.) The number of invalidated claims are as follows: 35 claims for out-of-pocket expenses; 369,283 claims for lost time; and 221,726 claims for alternative cash payments. (*Id.*) An additional 105,376 claims have yet to be reviewed, but those will be completed shortly. (*Id.*)

### F. Attorneys' Fees, Expenses, and Service Awards

In a separate filing, and pursuant to both the Settlement Agreement and Rule 23, Class Counsel moved for an award of their reasonable attorneys' fees and actually incurred out-of-pocket expenses. *See* Dkt. No. 132; Baxter-Kauf Decl. ¶ 8. In that same motion, Class Counsel also sought $1,500 in a service award to be awarded by the Court for each of the Named Plaintiffs. The Settlement Agreement provides that the Settlement is not conditioned upon the Court's approval of any requested service award or any award of Class Counsel's attorneys' fees, costs, or expenses. (SA at 20 ¶¶ 9.3, 10.3.)

### III. ARGUMENT

#### A. Final Approval Should Be Granted.

Rule 23(e) requires that classes which are to be certified for settlement purposes be approved by the Court. The Settlement is presumptively fair and should be approved. Courts generally favor settlements in complex cases such as this. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[S]trong public policy favors agreements, and

courts should approach them with a presumption in their favor."). In order to approve the settlement, the Court must conclude the cost and expense of notice is justified by the parties showing that the factors of Rule 23(e)(2) are satisfied and the class can be certified. Fed. R. Civ. P. 23(e)(1)(B). In the Preliminary Approval Order, the Court determined that the Settlement was sufficient to require notice, and that the notice proposed by the parties was satisfactory. Since that Order, notice has been given sufficient to satisfy due process. (*See* CPT Decl. ¶ 16.) The Court should now consider final settlement approval. Fed. R. Civ. P. ("Fed. R. Civ. P. ") 23(e).[3]

To finally approve the settlement, the Court must decide if the settlement is "fair, reasonable and adequate." Rule 23(e)(2); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). This Court has broad discretion in evaluating a class action settlement. *Van Horn v. Trickey*, 840 F.2d 604, 606-07 (8th Cir. 1988) ("Such a determination is committed to the sound discretion of the trial judge. Great weight is accorded [a trial judge's] views because he is exposed to the litigants, and their strategies, positions and proofs.").

### 1.    *The Settlement Is Presumptively Fair.*

The proponents of a settlement bear the burden of showing "by a preponderance of the evidence" that a settlement is fair and appropriate. *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 676 (S.D. Iowa 2009). However, courts have found that a presumption

---

[3] *See also White v. Nat'l Football League*, 822 F. Supp. 1389, 1397 (D. Minn. 1993); *In re Employee Ben. Plans Sec. Litig.*, No. CIV. 3-92-708, 1993 WL 330595, at *3 (D. Minn. June 2, 1993); and *Holden v. Burlington Northern Inc.*, 665 F. Supp. 1398, 1402-03 (D. Minn. 1987).

of fairness exists where: the settlement was reached through arm's length settlement negotiations, such as mediation with a third party; occurred after substantial discovery; was achieved through experienced counsel; and had a relatively low number of objectors. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013); *see also Hashw v. Dep't Stores Nat'l Bank*, 182 F.Supp.3d 935, 943, 953 (D. Minn. 2016). These factors are all present here.

The participation of an independent mediator is indicative of the fairness of the proposed Settlement. *See Khoday v. Symantec Corp.*, No. 11-CV-180, 2016 WL 1637039, at *7 (D. Minn. Apr. 5, 2016), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, the Parties participated in multiple mediation sessions with the Honorable Jeffrey Keyes, United States Magistrate Judge (ret.), and exchanged discovery and information throughout this process. (Baxter-Kauf Decl. ¶ 3.) The Settlement is demonstrably the product of extensive arm's-length negotiations.  The parties had also exchanged discovery—and additional information through the mediation process—so as to allow counsel to adequately assess the propriety of settlement given liability, risk, and the financial condition of the defendant.

The Settlement here was also reached with the involvement of experienced counsel. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *In re Employee Ben. Plans Sec. Litig.*, 1993 WL 330595, at *3. Counsel appearing for the Named Plaintiffs understood the strengths and weaknesses of the case and have many years of experience in conducting complex class

action litigation. (Baxter-Kauf Decl. ¶ 9.) The experience of the attorneys involved in securing the Settlement is further reason to approve the Settlement as fair.

Finally, despite the extensive notice program, there have been no objectors to the settlement. "The absence of any opposition to the settlement strongly supports final approval." *Zurn*, 2013 WL 716088, at *7. Here, there were no objections filed or received, and no requests for exclusion from the settlement. The Notice advised Settlement Class members of their right to object or seek exclusion. (CPT Decl. Ex. A.) If a sufficiently small proportion of class members object to the settlement, courts find that this factor weighs in favor of the settlement. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). This is because the court can assume the vast majority of the class support the settlement. The fact that no settlement class members have filed formal objections or opted out of the class provides a high quantum of support for approving the Settlement.

### 2.    *The Law Favors Settlements.*

"The policy of the law encourages compromise to avoid the uncertainties of the outcome of litigation as well as the avoidance of wasteful litigation and the expense incident thereto." *Pfizer v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972); *see also Holden v. Burlington Northern Inc.*, 665 F. Supp. 1398, 1402-03 (D. Minn. 1987).. This policy is especially applicable to class action litigation, which is notoriously complex. *See*, *e.g.*, *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon judicial resources. The instant dispute is likewise complex, involving significant technological and data-security

12

questions requiring competing experts, evaluation of complex data, and potential issues surrounding the amount of damages. By approving the Settlement, the Court would honor the presumption of favor for settlements and avoid further straining the resources of the parties and the Court.

### 3.    *Rule 23(e) Standards for Approval of a Settlement.*

To be approved under Rule 23, a proposed class settlement must be "fair, adequate and reasonable, and not the product of collusion between parties." *Petrovic*, 200 F.3d at 1148. Rule 23(e) provides that before approving a settlement, the court must conclude that: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate [; and] (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. Fed. R. Civ. P. 23(e)(2). To determine if relief is adequate under section (C), the court must also consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

*Id*.

As shown above, throughout this case the Named Plaintiffs and Class Counsel have efficiently and , professionally represented the interests of the Settlement Class Members. Further, this settlement was made at arms' length and culminated after multiple mediation sessions with a highly regarded, retired United States Magistrate Judge. Additionally, all members of the Settlement Class have access to both direct reimbursement for out-of-

pocket expenses and lost time, but also equal *pro rata* payments from the remaining Settlement Fund. The result in the Settlement is also adequate.

> i.    *The costs, risks, and delay of trial and appeal.*

The Parties discussed the claims and defenses in this case at length during negotiations, and the Named Plaintiffs and Class Counsel understood there were significant risks of proceeding. (Baxter-Kauf Decl. ¶ 4.) Data Breach cases like this are risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Named Plaintiffs and Class Members gain significant benefits without having to face further risk. In view of the uncertainties, the result is an excellent one meriting the approval of the Court. *See In re Employee Ben. Plans Sec. Litig.*, 1993 WL 330595, at *4 ("It is proper to take the bird in the hand instead of a prospective flock in the bush.") (citation modified).

14

Furthermore, Defendant's finances were identified early as a barrier to recovery if the case proceeded to judgment on the merits. During negotiations, Defendant provided financial documents to Class Counsel through the mediator, and Named Plaintiffs could verify the financial risk posed with collecting on any judgment. Additionally, the next steps in this case would be costly for both sides, including extensive additional factual and expert discovery, a class certification motion, summary judgment, expert motions, trial, and appeals. These steps all come with added risks and costs, which would only delay any compensation to the Class if they would be successful through each step along the way. In light of the facts discussed above, this factor weighs in favor of approving the settlement. *Murphy v. Harpstead*, No. CV 16-2623 (DWF/LIB), 2023 WL 4034515, at *6 (D. Minn. June 15, 2023) (stating that where the "cost, risks, and delay of trial and appeal" are high and litigation has been lengthy, this factor weighs in favor of approval).

> ii.     *The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.*

Here, the Parties agreed to use a professional settlement administrator —CPT— to handle claims. The Court approved CPT's appointment. Preliminary Approval Order at 5. CPT has efficiently completed the Notice plan and collected claims from the Settlement Class Members. (SA ¶ 8.2.) The Administrator has reviewed the claims and determined whether they are adequate and include the information ordered by the Preliminary Approval Order. Under the Settlement, the Settlement Fund will be administered by the Administrator (*Id.*), who will be best positioned to disburse funds to the Settlement Class Members because CPT received and analyzed the claims along with ClaimScore. (CPT

Decl. ¶¶ 3 & 18.) CPT is a company that has been administering class action settlements for years and has the experience necessary to distribute relief to the class efficiently and professionally. (*Id.* ¶ 2.)  CPT uses ClaimScore, which analyzed the claims received by CPT for fraud. (*Id.*) The proposed method of distributing relief to the Class will be effective and supports approving the Settlement.

> iii.    *The terms of any proposed award of attorney's fees, including timing of payment.*

All terms of relief afforded to the Settlement Class members were negotiated first before any discussion of attorneys' fees and cost. (Baxter-Kauf Decl. ¶ 3.) The Settlement includes the total amount that Class Counsel will request, 33 1/3% of the Settlement Fund, and payment of any amount for reasonable attorneys' fees and costs the Court approves. (CPT Decl. Ex. A, at 8.) The terms for attorneys' fees and costs are fair and reasonable, for all the reasons set forth in the separate motion, which are incorporated herein. Payment of the attorneys' fees will be due 10 days after the effective date in the Settlement. (SA ¶ 10.2.) This is similar to the timing for payments to the Class and other administration. (*E.g.*, SA ¶ 4.6.) The terms of the proposed award of attorneys' fees weighs in favor of approval of the Settlement.

> iv.    *Any agreement required to be identified under Rule 23(e)(3).*

There are no other agreements that require disclosure under Rule 23(e)(3) other than the Settlement Agreement. As such, this factor is neutral.

#### 4.    *Van Horn Factors.*

When analyzing a settlement, the Eights Circuit directs district courts to consider additional factors: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn.* 840 F.2d at 607The most important factor for a court's consideration is the balance between the relief obtained and the likelihood of success on the merits. *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 691 (D. Minn. 1994), *amended by* 858 F. Supp. 944 (D. Minn. 1994). Other factors the court should consider include: the experience of counsel; the negotiation process; the extent of discovery and stage of the proceedings; and the reaction of the Class. *Van Horn*, 840 F.2d at 607; *Holden*, 665 F. Supp. at 1407. Each of these factors supports approval of the Settlement.

> i.    *The relief obtained balanced by the likelihood of success on the merits.*

The Settlement Agreement represents a good result for the Class in light of the difficult issues facing both parties at trial. As one court has noted in the context of complex litigation, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *W. Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (citing instances in which settlements were rejected by the court and Plaintiffs ultimately lost at trial or recovered less than the amount of the proposed settlement).

Named Plaintiffs and Class Counsel believe that they could have succeeded on certifying a class given the strength of their claims. (Baxter-Kauf Decl. ¶ 4.) However, they are also aware of the risks that come with proceeding forward in data breach class actions like this. (*Id*.) As stated previously, data breach class actions are especially risky, expensive, and complex.

In contrast to the complexity and risks of continued litigation, the Settlement Agreement provides Named Plaintiffs and Settlement Class Members significant benefits without having to face further risk. In view of these uncertainties, the result is an fair and reasonable one making this factor weigh toward approval. *See Employee Ben. Plans*, 1993 WL 330595, at *4.

### ii.    Financial Condition of the Defendant.

One of the key issues at mediation was Defendant's financial condition and the ability of Defendant to pay a substantial judgment. (SA at 3.) Class Counsel and Named Plaintiffs determined that they would be unlikely to recover on a judgment if the Class was fully successful after trial. (Baxter-Kauf Decl. ¶ 4.) However, Defendant has represented, and the financial information reviewed by Class Counsel appears to confirm, that Defendant is able to pay the amount established in the Settlement. As such, the Class is now guaranteed a recovery (if the Settlement Class members submit a valid claim). This factor therefore weighs in favor of approval of the settlement. *Compare Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (holding that this factor is neutral if the defendant's situation is not an issue) with *Rodriguez v. GC Pizza LLC*, No. 4:20CV3106, 2025 WL 1555128, at

18

*4 (D. Neb. June 2, 2025) (finding this factor weighs in favor of approval if the defendant has minimal assets to pay a future judgment).

> iii.    The complexity, expense and likely duration of the litigation would be considerable were the action to continue.

The next factor is the complexity, overall expense, and likely delay caused by litigation if the settlement is not approved and courts conclude that this factor weighs in favor of approval if the parties face a highly complex case, a very expensive case, and a lengthy case. Elements that the Court should look at on weighing this factor are the "numerous legal and factual defenses that, absent settlement, will require full discovery, including numerous depositions, briefing, and additional pre-trial work. Class certification, expert discovery, and summary judgment motions . . . in addition to a trial and possible appeals." *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017); *see also Heller*, 548 N.W.2d at 290 ("[T]he settlement provides relief faster and with fewer transaction costs than full litigation."); *Petrovic*, 200 F.3d at 1149 (stating similar considerations).

Although the efforts of Class Counsel have advanced this litigation considerably since its inception, significant additional resources would be necessary to prosecute the case through the continuation and completion of full discovery, class certification, dispositive motions, and pretrial and trial proceedings. (Baxter-Kauf Decl. ¶ 4); *see Schmidt v. Fuller Brush* Co., 527 F.2d 532, 535 (8th Cir. 1975) (finding that class actions "place an enormous burden of costs and expense upon the parties"). Class Counsel encountered and dealt with complex issues at various stages of this litigation. Numerous plaintiffs filed potential class action complaints that required consolidation. Ord., Dkt. No.

19

34. Netgain filed a motion to dismiss raising various legal arguments, several of which succeeded. Def.'s Mot. to Dismiss, Dkt. No. 45.  The result of this motion narrowed the claims in this action. The next stage of this case would have been a complicated class certification motion, where many of the same arguments that formed Netgain's motion to dismiss would be renewed, but with a more exacting review. (Baxter-Kauf Decl. ¶ 3.) Because caselaw generally favors defendants with respect to a number of the issues in data breach cases, Class Counsel spent significant time developing strong, supported, and persuasive arguments. (*Id*. ¶ 4.) These efforts required extensive legal research. (*Id*. ¶ 4.) Further, a judgment favorable to Plaintiff would likely be the subject of post-trial motions and appeals. (*Id*. ¶ 4.) Those actions would substantially prolong the case and delay the ultimate payment to members of the Class, and risk recovery to the Class due to Netgain's financial condition in the event Plaintiffs were to prevail. (*Id*.) Instead, the Settlement provides for the cessation of litigation costs and immediate and certain payment to Class Members.

It is indisputable that continuation of this litigation would be complex, costly and of substantial duration. These practical considerations favor approval of the Settlement. *Keil*, 862 F.3d at 698. Class Counsel believe this case would be very complicated and expensive, as well as lengthy, and the Court should give deference to this experienced assessment. *Id*. ("Class counsel's views are entitled to deference, especially since the district court found that they have significant experience in class actions and complex litigation.").

20

> iv.    *The favorable reaction of the Class to the Settlement supports its approval.*

Settlement Class members have had  a positive response to the Settlement after notice pursuant to the Notice Plan that conformed to due process and this Court's Order granting preliminary approval of the settlement. As the Supreme Court explained in *Mullane v. Central Hanover Bank & Trust Co.*, "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). "[W]hat qualifies as a 'reasonable effort' is a case-specific question subject to the wide discretion of the trial judge." William B. Rubenstein, Newberg on Class Actions § 8:8 (5th ed. 2015). In this case, CPT Group executed the Notice, which included a 45-day media campaign online with particular focus on states where companies involved in the data breach are located. (CPT Decl. ¶ 19.) The campaign included a programmatic display, social media ads, paid search result emphasis, press releases in multiple places, and a unique website. (*Id.* ¶¶ 5-16.) The Court previously approved this notice program constituted the best practicable notice to the Settlement Class and satisfied the requirements of due process and Rule 23. (Preliminary Approval Order at 6.) And the notice was received. As of the date of filing, CPT received 704,440 claims of which 4,026 CPT determined were valid. (CPT Decl. ¶¶ 17-19.)

A low number of objections is a powerful indicator that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*,

No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement.") Requests for exclusion from the settlement class and objections to the settlement were due on September 2, 2025. (Preliminary Approval Order at 13.) Claim forms were due on September 17, 2025. (*Id*.) To date, no written objections to the settlement have been received. (CPT Decl. ¶ 21.) There have also been no requests to be excluded from the Settlement. (*Id*.)

### B.    The Class Meets the Requirements for Certification.

The Settlement Class should be certified because the class meets the requirements of Rule 23. Fed. R. Civ. P.  23. Rule 23(a) sets out four prerequisites to certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*White*, 822 F. Supp. at 1402. There are two more implied requirements for Rule 23(a): definability of the class and the class representatives are part of the class. *Powell v. National Football League*, 711 F. Supp. 959, 966 (D.Minn.1989) (citation omitted); *see also In re*

*Worker's Compensation*, 130 F.R.D. 99, 104 (D.Minn.1990) ("[t]he implicit criterion, subsumed within Rule 23, is the existence of a defined class of which the named representatives are a part.")

After Rule 23(a) is met, a class must meet the requirements of one of the subsections of Rule 23(b). *Id.* The Named Plaintiffs in this case request certification of a class under Rule 23(b)(3), requiring: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

When dealing with a settlement, courts routinely find that class certification is appropriate due to the rationale of efficient resolution of such large cases. *White*, 822 F. Supp. at 1402 (citing *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 157–58 (S.D. Ohio 1992) ("[t]he rationale behind the loosening of the requirements is to encourage sweeping settlements of complex disputes") and *In re A.H. Robins*, 85 B.R. 373, 378 (Bankr. E.D. Va.1988), *aff'd*, 880 F.2d 709, 738–40 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989)).

### 1.      *Rule 23(a)*

The Settlement Class meets the requirements of Rule 23(a): it is so numerous as to make ordinary joinder impracticable, there are numerous questions of fact and law common to the class, the Named Plaintiffs' claims are typical of the claims of the Settlement Class, and the Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class. Each factor is discussed in turn.

### i.    *Numerosity.*

There is no absolute number that satisfies the numerosity requirement." *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995) (citing *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 664 (D. Minn. 1991)). However, courts have recognized that as few as 40 members could satisfy this. *Lockwood Motors, Inc.*, 162 F.R.D. at 664 (quoting Newberg, *Class Actions* § 3.05 at 3-25; remaining citations omitted). The Settlement Class consists of approximately two million people. To date, thousands of claims have been verified by the Administrator. This establishes definitively that the class is so numerous to make joinder impracticable.

### ii.    *Commonality.*

Second, the commonality requirement is met here because questions of law or fact are common to the class. Fed. R. Civ. P.  23(a)(2). This requirement is met when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Numerous questions of law and fact that are common to all Settlement Class members will determine Netgain's liability to the Settlement Class. In particular, Named Plaintiffs' negligence and declaratory judgment claims based on Netgain's implementation and maintenance of inadequate data security measures will be determined by Netgain's actions or inactions, and whether that conduct allowed the Data Breach to occur. Common evidence will dictate the resolution of every Settlement Class member's claim in relation to those allegations. The commonality requirement in Rule 23(a)(2) is therefore satisfied.

### iii.    Typicality.

Rule 23(a)(3) requires that plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to . . . the same legal theory" and "have the same essential characteristics" as the claims of other class members. *See, e.g.*, *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (11th Cir. 1983). Plaintiffs' claims all arise from the Data Breach and Defendant's alleged negligence in relation to the same. The legal claims are also the same: negligence and declaratory judgment. The Named Plaintiffs' claims are all typical of the Settlement Class's claims. Therefore, the typicality requirement in Fed. R. Civ. P. 23(a)(3) is met.

### iv.    Adequate Representatives.

Finally, Rule 23(a)(4) focuses on the representatives of the Class: the Named Plaintiffs and Class Counsel. The Named Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P.  23(a)(4). This inquiry includes "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). Here, the Named Plaintiffs are not antagonistic to the remaining class members and are not seeking relief separate from the remainder of the Class. Further, they have retained qualified and experienced lawyers who have practiced in data breach cases. The Court has already approved Class Counsel and found them "experienced and will adequately protect the interests of the Settlement Class" (Preliminary Approval Order at 3.) The Settlement Class should be certified because it satisfies Rule 23(a).

25

## 2.    *Rule 23(b)(3)*

The Settlement Class satisfies the requirements of Rule 23(b)(3) and should be certified. The questions of law or fact in this case predominate over any individual issues or questions and class treatment is superior to other methods for fairly and efficiently resolving this case. Feed. R. Civ. P. 23(b)(3).  Each factor is discussed below.

### i.    *Predominance*

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P.  23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable traits." *Amchem Prods., Inc.*, 521 U.S. at 615.

Here, there are common questions of law and fact pertaining to Defendant's negligence and declaratory judgment claims. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Class Members. *See, e.g., In re Target Corp. Customer Data Sec. Breach*

*Litig.*, 309 F.R.D. 482, 486-89 (D. Minn. 2015). All of the issues related to negligence—duty, breach, causation and damages— can be resolved on a class-wide basis. First, there is the legal question affecting all Class Members as to whether Netgain owed a duty to them to take reasonable care in managing and protecting their Private Information. Second, whether Netgain breached that duty by failing to act reasonably in protecting Private Information and to use adequate systems, procedures, and personnel to prevent the disclosure and theft of the Private Information affects all Class Members. Third, proximate cause is also a common issue because the Class would uniformly show the relationship between the Data Breach and the failure to appropriately safeguard its systems, resulting in compromised information and ultimately caused Plaintiff and the Class harm. In all, the common issues of duty, breach, and causation overwhelmingly predominate over any remaining individualized issues.

### ii.    Superiority

Under Rule 23(b)(3), a court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations omitted). Litigating the same claims of hundreds of thousands of class members and requiring presentation of the same evidence and expert opinions each time is blatantly inefficient. Here, the Data Breach affected millions of people located across the United States. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments

in courts throughout the nation and therefore will promote judicial economy and efficiency. Additionally, many Settlement Class members are individuals who suffered small damages. The awards of these Settlement Class members would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, this element is satisfied.

### C.    Notice to the Class Satisfied Requirements of Rule 23 and Due Process.

The requirements of Rule 23 and due process have been fulfilled by the Notice program. In the Preliminary Approval Order, the Court found that the proposed Notice program satisfied due process. "[N]otice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Petrovic*, 200 F.3d at 1153. CPT receive thousands of verified claims from class members after the media campaign was completed. The campaign targeted geographical areas where affected Netgain clients were located, and included news releases, a unique website, online ads, and search result prioritization. (CPT Decl. ¶¶ 17-23.)  which includes almost three quarters of a million claim forms filed, CPT believes that a sufficient percentage of the Settlement Class has received substantive notice of the settlement. (CPT Decl. ¶¶ 17-23.). However, CPT and Class Counsel believe that the reach of the Notice program was broad enough, and provided enough detail, to ensure substantive notice has been provided to the Settlement Class. Notice gave Settlement Class members the opportunity to opt out of the Settlement; however, no members have submitted requests for exclusion or objections to the Settlement.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Named Plaintiffs request that the Court give final approval for the Settlement. As part of this, Named Plaintiffs request that the Court find that the Settlement is reasonable and fair, and that it satisfies the requirements of due process and Rule 23. Further, the Named Plaintiffs request that the Court finally certify the Settlement Class for purposes of this Settlement, direct the payment of attorneys' fees, expenses, and service awards as requested by the Named Plaintiffs' separate motion, and begin disbursement to the valid claims submitted pursuant to the Notice. Further, the Named Plaintiffs request that the court overrule any objections received between filing of this motion and the final fairness hearing. Finally, the Named Plaintiffs request that the court enter any other order necessary to effectuate this settlement.

Dated: September 30, 2025                    Respectfully submitted,


                                        */s/ Kate M. Baxter-Kauf*
                                        Kate M. Baxter-Kauf (#0392037)
                                        Karen Hanson Riebel (#0219770)
                                        Maureen Kane Berg (#033344X)
                                        **LOCKRIDGE GRINDAL NAUEN PLLP**
                                        100 Washington Ave. South, Suite 2200
                                        Minneapolis, MN 55401
                                        Telephone: (612) 339-6900
                                        kmbaxter-kauf@locklaw.com
                                        khriebel@locklaw.com
                                        mkberg@locklaw.com

                                        ***Chair of the Interim Executive Committee***

Bryan L. Bleichner (#0326689)
Jeffrey D. Bores (#227699)
Christopher P. Renz (#0313415)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue S, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

Gayle M. Blatt (*pro hac vice*)
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Phone: (619) 238-1811
gmb@cglaw.com

Brian C. Gudmundson (#336695)
Michael L. Laird (#398436)
Rachel K. Tack (#399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

*Co-Lead Class Counsel*

Nathan D. Prosser (#0329745)
Anne T. Regan (#0333852)
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
nprosser@hjlawfirm.com
aregan@hjlawfirm.com

30

Terence R. Coates (*pro hac vice* anticipated)
Justin Walker (*pro hac vice* anticipated)
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com

Daniel E. Gustafson (#202241)
Amanda M. Williams (#341691)
David A. Goodwin (#386715)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
awilliams@gustafsongluek.com
dgoodwin@gustafsongluek.com

Nicholas A. Migliaccio (*pro hac vice* anticipated)
Jason S. Rathod (*pro hac vice* anticipated)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Raina C. Borrelli (#392127)
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

*Interim Executive Committee*