**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| | Court File No. 21-cv-1210 (SRN/LIB) |
| | CLASS ACTION |
| *IN RE: NETGAIN TECHNOLOGY, LLC, CONSUMER DATA BREACH LITIGATION* | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, FORDER FOR JUDGMENT, AND JUDGMENT** |

This matter came before the Court on October 30, 2025 for a Final Fairness Hearing in the above-captioned case. Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay, and Robin Guertin (collectively "Named Plaintiffs"), appeared through their attorneys, Gayle Blatt, Christopher Renz, and Brian Gudmundson (referred to collectively herein as "Class Counsel"). Defendant Netgain Technology, LLC appeared through its counsel.

On May 19, 2025, the undersigned preliminarily approved a settlement between the Named Plaintiffs and the Defendant Netgain (the "PA Order"). In the PA Order, the Court provisionally certified a class for settlement purposes (the "Settlement Class"), directed that the parties send notice to the potential Settlement Class members, appointed a Settlement Administrator, appointed representatives plaintiffs, and appointed class counsel. Named Plaintiffs have filed a Motion for Final Approval of the Settlement, and request that the Court formally certify the Settlement Class and determine that the notice provided to the Settlement Class members and the Settlement meet the requirements for settlement of

a class action under Fed. R. Civ. P. 23. Class Counsel has separately moved for approval and payment of their attorneys' fees and expenses, as well as for service awards for the Named Plaintiffs (the "Fee Petition"), which the Court is addressing by separate order. Now, based upon the Named Plaintiff's unopposed motion, all its supporting documents and affidavits, the entire record in this case, and arguments of counsel, the Court grants Plaintiff's Motion, certifies the Settlement Class, and finds the Settlement fair, appropriate, and reasonable. As such, the Court makes the following Findings of Fact and Conclusions of Law.

## I.   <u>FACTUAL BACKGROUND</u>

### A.   **The Litigation.**

Netgain is a "service provider" who externally manages IT and cloud computing services for companies primarily in the healthcare and accounting industries.[1] (SA, p. 2.) Netgain provides a variety of IT-related services to clients, including cloud computing, technical infrastructure, IT management, and service and application management. (*Id*.) In September and November 2020, criminals illegally accessed information stored by certain customers on Netgain servers (the "Breach"). (*Id*.) In early 2021, Netgain began notifying clients of the Breach. (*Id*. ¶ 2.)

As a result of the Breach, personal information of individuals who are customers of Netgain's clients, was exfiltrated by the hackers. This information includes data which, either on its own or with other information, can be used to identify, locate, or contact a

---

[1] The facts as presented in the Settlement Agreement were agreed for the purposes of settlement only and are used here solely for the purposes of approving the Settlement.

person, and including without limitation, names, email addresses, phone numbers, home addresses, dates of birth, Social Security number (SSNs), drivers' license information, tax records, bank account and routing information, and other personally identifying information, as well as information used to process health insurance claims, prescription information, medical records and data, and other personal health information (the "**Personal Information**" or "**PII**").

In the summer of 2021, several Named Plaintiffs filed separate lawsuits (ECF 1) and later filed a joint motion to consolidate the cases, which the Court granted on August 24, 2021 (ECF 34) (collectively, these lawsuits are referred to herein as the "Action"). The Court retitled this consolidated Action as *In re: Netgain Technology, LLC Consumer Data Breach Litigation*. (ECF 34.) Plaintiffs then filed an amended complaint combining their claims into one consolidated complaint (the "Consolidated Class Action Complaint"). (ECF 35). Plaintiffs' Consolidated Class Action Complaint asserts claims for negligence, negligence per se, violations of the California Consumer Privacy Act, violations of the California Unfair Competition Law, violations of the Minnesota Health Records Act ("**MHRA**"), and for declaratory relief, and seeking remedies including damages and injunctive relief for the impact and harm they allege was caused by the Breach.

Defendant filed a motion to dismiss arguing Plainffs lacked Article III standing and did not state claims for negligence, negligence per se, violation of the MHRA, and declaratory and injunctive relief. (ECF 45.) The Court granted the motion in part and denied the motion in part. (ECF 56.) The Court dismissed Plaintiffs' negligence per se claim and

3

claim for violation of the MHRA. (*Id.*) After this, Plaintiffs obtained and reviewed discovery responses from the Defendant.

### B.    Negotiations.

The Parties engaged in multiple mediated settlement negotiations before the Honorable Jeffrey J. Keyes (Ret.) of Keyes ADR. (Baxter-Kauf Decl. ¶ 3.) After these mediations, the  Parties negotiated a final Settlement Agreement, which is now before the Court. (*Id.*) Based on the uncontroverted evidence, the Settlement Agreement was negotiated in good-faith and at an arms' reach.

### C.    The Terms of the Settlement.

Under the Settlement, Defendant agrees to pay a total of $1,900,000 into a non-reversionary fund that cannot be reclaimed by Defendant (the "Settlement Fund"). (*Id.* p. 8). One primary driver of this settlement is Defendant's financial state as represented by Netgain's attorneys. (SA pp. 3, 10-11). Plaintiffs were provided access to financial information from Netgain to assess the veracity of these claims. (SA p. 10).

Each Class Member will be able to submit a claim for a documented monetary loss incurred by the Class Member as defined in the Settlement (a "**Documented Loss**"), for time spent in a manner defined in the Settlement Agreement ("**Lost Time**"), or for cash payment. (SA p. 11.) A Class Member will be able to claim either the cash payment or reimbursement (for a Documented Loss and/or Lost Time). (*Id.*)  The maximum amount a Class Member can recover for Documented Loss and/or Lost Time is $5,000.00. (*Id.*) After claims for Documented Losses or Lost Time (if approved by the Administrator) are

calculated, the remaining amount of money in the Settlement Fund will be distributed pro rata to the claimants who made claims for cash payments. (*Id.*)

Defendant also agreed to injunctive relief for a period of three years after the effective date of the Settlement. (SA p. 9.) This agreement requires that Netgain adopt, continue, or implement: upgrading firewalls, routing through secured gateways, geo-blocking, ensuring its network is configured in a secure and scaleable manner, deploying virus prevention technology across Netgain's data environment, utilizing multi-factor authentication in hosting environments, and backing up data protection. (*Id.*) Class Counsel will receive the ability to ensure Netgain is employing these measures during the three years after the effective date. (*Id.*)

In exchange for the benefits conferred to the Class Members, the Named Plaintiffs and Class Members who do not timely and validate exclude themselves from the settlement will be deemed to release Netgain from claims arising from or related to the Data Breach. (SA p. 15.)

### D.    Preliminary Approval.

In the PR Order, the court preliminarily certified for settlement purposes the following class:

> all natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their Personal Information may have been compromised in the Attacks.

> Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any entity in which Netgain or its

parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

Further, the court appointed CPT Group, Inc. as the settlement administrator ("**CPT**" or the "**Administrator**") to manage the settlement notice and claims process. (SA pp. 16-20 & Baxter-Kauf Decl. ¶ 7.)

### E.    Notice Has Been Completed.

Based upon the uncontroverted evidence, it appears the Administrator has completed the Notice program directed by the Court's PA Order. (Declaration of Jennifer Forst ("**CPT Decl.**") ¶ 3.) The Administrator completed a 45-day media campaign across multiple media channels, social media, and news platforms, which target characteristics of the Class. (*Id*. ¶ 12-13.) On or about June 19, 2025, the Administrator began the media campaign. (*Id*.) This campaign included programmatic displays which appears on desktops and mobile devices accessing relevant websites and apps, social media ads (through Facebook and Instagram), online video ads, paid sponsored search results, an informational press release, and a website. (*Id*. ¶ 6-13.) The Administrator maintained these ads and also established a toll-free phone number for viewers to contact and obtain more information. (*Id*.) The Administrator believes these methods have adequately notified the Class Members of the settlement. (*Id*. ¶ 16.) To date, the Administrator has received 595,041 total responses. (*Id*. ¶ 19.) These responses included 103 claims for out-of-pocket expenses, 370,217 claims for lost time, and 224,807 claims for alternative cash payments. (*Id*.)

## II.   ANALYSIS

### A.   Final Approval Will Be Granted.

Notice has been completed and the Court now finds that the Settlement is appropriate. Because notice to the Class and an opportunity for objections have been given, the Court may now consider final settlement approval. Fed. R. Civ. P. 23(e); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1397 (D. Minn. 1993); *In re Employee Ben. Plans Sec. Litig.*, No. CIV. 3-92-708, 1993 WL 330595, at *3 (D. Minn. June 2, 1993); *Holden v. Burlington Northern Inc.*, 665 F.Supp. 1398, 1402-03 (D. Minn. 1987). First, the Court determines the Settlement class should be certified for settlement purposes. *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*). Ultimately the Court grants final approval of the settlement because it is "fair, reasonable and adequate." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

### 1.   *The Class Meets the Requirements for Certification.*

First, the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23 for certification. Rule 23(a) sets out four prerequisites to certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *White*, 822 F.Supp., at 1402. There are two more implied requirements for Rule 23(a): definability of the class and the class representatives are part of the class. *Powell v. National Football League*, 711 F.Supp. 959, 966 (D.Minn.1989) (citation omitted); *see also In re Worker's Compensation*, 130 F.R.D.

99, 104 (D.Minn.1990) ("[t]he implicit criterion, subsumed within Rule 23, is the existence of a defined class of which the named representatives are a part.")

When dealing with a settlement, courts routinely find that class certification is appropriate due to the rationale of efficient resolution of such large cases. *White*, 822 F.Supp., at 1402 (citing *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 157–58 (S.D. Ohio 1992) ("[t]he rationale behind the loosening of the requirements is to encourage sweeping settlements of complex disputes") and *In re A.H. Robins*, 85 B.R. 373, 378 (Bankr. E.D. Va.1988), *aff'd*, 880 F.2d 709, 738–40 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989)). Rule 23(a)

>        i.    *Rule 23(a).*

The Settlement Class meets each of the requirements of Rule 23(a). The Settlement Class is so numerous as to make ordinary joinder impracticable. There are numerous question of fact and law common to the class. The Named Plaintiffs' claims are typical of the claims of the class. Finally, the Named Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

>        a.    *Numerosity.*

The Settlement Class consists of approximately two million people. To date, more than half a million people have responded to the Notice. More than four thousand claims have been found valid by the Administrator. The Settlement Class is therefore sufficiently numerous.

### b. Commonality.

Second, multiple questions of law or fact are common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is met when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Numerous questions of law and fact will determine Netgain's liability to the Settlement Class. In particular, Named Plaintiffs' negligence and declaratory judgment claims based on Netgain's implementation and maintenance of inadequate data security measures will be determined by Netgain's actions or inactions, and whether that conduct allowed the Data Breach to occur. Common evidence will dictate the resolution of every Settlement Class member's claim. The Court finds that these issues are common to the entire Settlement Class.

### c. Typicality.

Rule 23(a)(3) requires that plaintiffs' claims "arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory" and "have the same essential characteristics" as the claims of other class members. *See, e.g., De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (11th Cir. 1983). Plaintiffs' claims all arise from the Data Breach. The legal claims are also the same: negligence and declaratory judgment. The Court finds that Plaintiffs' claims are typical of the entire Settlement Class.

### d. Adequate Representatives.

Finally, Rule 23(a)(4) focuses on the representatives of the Class: the Named Plaintiffs and Class Counsel. The Named Plaintiffs must "fairly and adequately protect the

9

interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry includes "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). Named Plaintiffs are not antagonistic to the remaining class members and are not seeking relief separate from the remainder of the Class. Further, they have retained qualified and experienced lawyers who have practiced in data breach cases. The Court finds that the Named Plaintiffs and Class Counsel will adequately represent the Settlement Class.

## ii.   *Rule 23(b)*

The Settlement Class satisfies the requirements of Rule 23(b)(3) because questions of law and fact predominate over any individual issues or questions and class treatment is superior to other methods for fairly and efficiently resolving this case. Fed. R. Civ. P. 23(b)(3).

### a.   *Predominance*

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.,*

10

910 F.3d 371, 374-75 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable traits." *Amchem Prods., Inc*., 521 U.S. at 615.

Here, there are common questions of law and fact pertaining to Plaintiffs' negligence and declaratory judgment claims. In other words, the predominance requirement is met because the overwhelming issues of law and fact are common to all Plaintiffs and Class Members. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig*., 309 F.R.D. 482, 486-89 (D. Minn. 2015). All of the issues related to negligence – duty, breach, causation and damages – can be resolved on a class-wide basis. First, there is the legal question affecting all Class Members as to whether Netgain owed a duty to them to take reasonable care in managing and protecting their Private Information. Second, whether Netgain breached that duty by failing to act reasonably in protecting Private Information and to use adequate systems, procedures, and personnel to prevent the disclosure and theft of the Private Information affects all Class Members. Proximate cause is also a common issue because the Class would uniformly show the relationship between the Data Breach and the failure to appropriately safeguard its systems, resulting in compromised information and ultimately caused Plaintiff and the Class harm. In all, the common issues of duty, breach, and causation overwhelmingly predominate over any remaining individualized issues.

### b.    Superiority

Under Rule 23(b)(3), the Court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004) (internal quotations omitted). Litigating the same claims of hundreds of thousands of class members and requiring presentation of the same evidence and expert opinions each time is blatantly inefficient. Here, the Data Breach affected millions of people located across the United States. Resolving this controversy on a class-wide basis will reduce litigation costs by eliminating the need for repetitive discovery and arguments in courts throughout the nation and therefore will promote judicial economy and efficiency. Additionally, many Settlement Class members are individuals who suffered small damages. The awards of these Settlement Class members would not justify the high costs of individually pursuing their claims. Because class treatment is superior to individual litigation, superiority is satisfied.

### 2.    *Standards for Approval of a Settlement.*

To be approved under Fed. R. Civ. P. 23, a proposed class settlement must be "fair, adequate and reasonable, and not the product of collusion between parties." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999); *Van Horn*, 840 F.2d, at 606; *Grunin*, 513 F.2d, at 123. The court must compare the settlement's terms with the results the plaintiff would have likely received after a full trial. *Id*. These factors show the Settlement should be approved.

### 3. *Factors to Be Considered.*

In determining whether a settlement is fair, reasonable and adequate, the Court considers the balance between the relief obtained and the likelihood of success on the merits. *Buchet v. ITT Consumer Fin. Corp.*, 845 F.Supp. 684, 691 (D. Minn. 1994), *amended by* 858 F.Supp. 944 (D. Minn. 1994); *accord Carson*, 450 U.S. at 88 n.14; *Van Horn*, 840 F.2d, at 607. Other factors the court considers include: the complexity, expense, and likely duration of further litigation; the experience of counsel; the negotiation process; the extent of discovery and stage of the proceedings; and the reaction of the Class. *Van Horn*, 840 F.2d, at 607; *Holden*, 665 F.Supp., at 1407.

Each of these factors is discussed below and supports approval of the Settlement.

> i. *The Relief Obtained Balanced by the Likelihood of Success on the Merits.*

The agreement in this case is a good result for the class in light of the difficult issues facing both parties at trial. Settlement Class Members now have a certain remedy. Named Plaintiffs and Class Counsel believed that they could have succeeded on certifying a class given the strength of their claims. However, they were all too aware of the risks that come with proceeding forward in data breach class actions like this. (Baxter-Kauf Decl. ¶ 4.) Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases

13

are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *See In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig*., No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Named Plaintiffs and Class Members gain significant benefits without having to face further risk. In view of the uncertainties, the result is an excellent one meriting the approval of the Court. *See In re Employee Ben. Plans Sec. Litig*., 1993 WL 330595, at *4 ("It is proper to take the bird in the hand instead of a prospective flock in the bush.") (citation, quotation marks, and alterations omitted). This factor weighs in favor of approving the Settlement.

> ii.    *The Complexity, Expense and Likely Duration of the Litigation Would Be Considerable Were the Action to Continue.*

It is indisputable that continuation of this litigation would be complex, costly and of substantial duration. These practical considerations favor approval of the Settlement. *Heller*, 548 N.W.2d at 290 ("[T]he settlement provides relief faster and with fewer transaction costs than full litigation."); *see also Petrovic*, 200 F.3d, at 1149 (stating similar considerations).

Although the efforts of Class Counsel have advanced this litigation considerably since its inception, significant additional resources would be necessary to prosecute the

14

case through the continuation and completion of full discovery, class certification, dispositive motions, and pretrial and trial proceedings. (Baxter-Kauf Decl. ¶ 4); *see Schmidt v. Fuller Brush* Co., 527 F.2d 532, 535 (8th Cir. 1975) (finding that class actions "place an enormous burden of costs and expense upon the parties".) Further, a judgment favorable to Plaintiff may be the subject of post-trial motions and appeals. Those actions would substantially prolong the case, and delay the ultimate payment to members of the Class, in the event Plaintiffs were to prevail. Instead, the Settlement provides for the cessation of litigation costs and immediate and certain payment to Class Members. Accordingly, the complexity, expense and likely duration of continued litigation weigh in favor of approval of the Settlement.

>        iii.    *The Proposed Settlement Was the Product of Informed, Good Faith Negotiations by Parties Thoroughly Conversant with the Strengths and Weaknesses of the Case.*

The Settlement was negotiated at arm's-length by Class Counsel and counsel for Defendant by the Honorable Jeffrey Keyes, United States Magistrate Judge (ret.), acting as a mediator, in extensive negotiations. (Baxter-Kauf Decl. ¶ 3.) Counsel appearing for the Named Plaintiffs understood the strengths and weaknesses of the case and have many years of experience in conducting complex class action litigation. *See In re Employee Ben. Plans Sec. Litig.*, 1993 WL 330595, at *3 ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."); *Heller*, 548 N.W.2d, at 291 (in approving class settlement, court recognized appointed class counsel to be competent litigators with extensive class action experience).

15

The participation of an independent mediator is indicative of the fairness of the proposed Settlement. *See Khoday v. Symantec Corp.*, No. 11-CV-180, 2016 WL 1637039, at \*7 (D. Minn. Apr. 5, 2016), report and recommendation adopted, 2016 WL 1626836 (D. Minn. Apr. 22, 2016); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Thus, the Court finds that the Settlement is the product of arm's-length negotiations.

Additionally, the progress of the case favors settlement. Class Counsel encountered and dealt with complex issues at various stages of this litigation. Numerous plaintiffs filed potential class action complaints that required consolidation. (ECF 34.) Netgain filed a motion to dismiss raising various legal arguments, several of which succeeded. (ECF 45.) The result of this motion significantly narrowed the claims in this action. The next stage of this case would have been a complicated class certification motion, where many of the same arguments form Netgain's motion to dismiss would be renewed, but with a more exacting review. Because caselaw generally favors defendants with respect to a number of the issues in data breach cases, Class Counsel spent significant time developing strong, supported, and persuasive arguments. These efforts required extensive legal research. (Baxter-Kauf Decl. ¶ 4.)

This factor strongly favors approval of the settlement. *Accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000).

> iv. *The Favorable Reaction of the Class to the Settlement Supports its Approval.*

Settlement Class members have had an overwhelmingly positive response to the Settlement after receiving notice pursuant to the Notice Plan that conformed to due process.

As the Supreme Court explained in *Mullane v. Central Hanover Bank & Trust Co.*, "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). "[W]hat qualifies as a 'reasonable effort' is a case-specific question subject to the wide discretion of the trial judge." William B. Rubenstien, Newberg on Class Actions § 8:8 (5th ed. 2015). However, identifiable class members are entitled to individual notice, i.e., direct-mailed notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974). In this case, CPT Group executed the Notice, which included a 45-day media campaign online with particular focus on states where companies involved in the data breach are located. (CPT Decl. ¶ 6-13.)  The campaign included a programmatic display, social media ads, paid search result emphasis, press releases in multiple places, and a unique website. (*Id.*) CPT received 704,440 claims. (*Id.*) The Administrator used a service called ClaimScore to evaluate the initial claims, and as of filing of Plaintiffs' Motion for Final Approval, had analyzed 599,064 claim submissions. (*Id.* ¶ 19.) These responses included 64 verified claims for out-of-pocket expenses, 929 valid claims for lost time, and 3,050 valid claims for alternative cash payments. (*Id.*) An additional 105,376 claims have yet to be reviewed, but those will be completed shortly. (*Id.*) The Process used by the Administrator in determining whether claims are valid is also reasonable and fair. ClaimScore recommends using a claim threshold of 700 to determine whether a claim is presumptively invalid. The invalidated claims are given an opportunity to appeal the determination and the Administrator has reserved a portion of the Settlement

17

Fund to provide awards for appealed claims. The amount of fraudulent claims is high, but this is explained by the lack of a class list and the method of notice used here. Not only does ClaimScore provide a basis to conclude these claims are invalid, but the Administrator's digital payment vendor also performs a secondary verification by checking for suspicious IP addresses, international PayPal accounts, and IP addresses which do not match the listed states and the invalidated claims are given the chance to appeal a determination about their invalidation. (CPT Decl. ¶ 20.)

Requests for exclusion from the settlement class and objections to the settlement were due on September 2, 2025. (PA Order, p. 13.) Claim Forms were due on September 17, 2025. (*Id*.) To date, no written objections to the settlement have been received.  (CPT Decl. ¶ 21.) There have been no requests to be excluded from the Settlement. (*Id*.) These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (noting where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement.") This factor weighs in favor of approval of the Settlement.

    *4.*     *Notice to the Class Satisfied Requirements of Fed. R. Civ. P. 23 and Due Process.*

The requirements of Federal Rule of Civil Procedure 23 and due process have been fulfilled by the Notice program. More than half a million individuals have submitted claims after the media campaign was completed. The campaign targeted states where affected Netgain clients were located, and included news releases, a unique website, online ads, and search result prioritization. (CPT Decl. ¶¶ 17-23.) The Court finds and concludes based off all the facts stated above and the Plaintiffs' Motion and accompanying documents that Notice in this case satisfies Federal Rule of Civil Procedure 23 and the constitutional requirements of due process.

## III.    <u>ORDER AND JUDGMENT</u>

Therefore, according to the foregoing Findings of Fact and Conclusions of Law, the court makes the following Order and Judgement:

1.     The Settlement is Approved and the Plaintiffs' Motion is GRANTED pursuant to Fed. R. Civ. P. 23(e) because it is fair, reasonable, and adequate to the Settlement Class.

2.     The Court has jurisdiction over the subject matter of this litigation, including the actions within this litigation, and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

3.     The Court adopts and incorporates herein the findings made under Fed. R. Civ. P. 23 in its Preliminary Approval Order. (ECF 131.)

4.   In reaching this conclusion, the Court considered the complexity, expense, and likely duration of the litigation, the Class's reaction to the settlement, and the result achieved.

5.   The Settlement was attained following an extensive investigation of the facts. It resulted from vigorous arm's-length negotiations, which were undertaken in good faith by counsel with significant experience litigating complex class actions.

6.   The following class is finally certified under Rule 23(b)(3):

   a.   all natural persons who are residents of the United States whose Personal Information was stored by Netgain Clients on Netgain servers, which was compromised in the Attacks, including all natural persons who are residents of the United States who were sent notice by a Netgain Client that their Personal Information may have been compromised in the Attacks.

   b.   Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their families; (2) Netgain, its subsidiaries, parent companies, successors, predecessors, and any entity in which Netgain or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person..

20

7. The Court previously appointed Gayle Blatt, Christopher Renz, and Brian Gudmundson as Class Counsel. This appointment is affirmed.

8. The Court previously appointed Plaintiffs Misty Meier (o.b.o. her minor child G.C-M.), Jane Doe, Susan M. Reichert, Robert Smithburg, Thomas Lindsay, and Robin Guertin as the Class Representatives. This appointment is affirmed.

9. The Settlement Fund, into which Defendant will deposit a total of $1,900,000 as detailed in the Settlement Agreement, plus accrued interest thereon, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 458B and the Treasury Regulations promulgated thereunder.

10. This Court hereby dismisses on the merits and with prejudice all Claims in the Plaintiffs' action against Defendants, with each party to bear its own costs and fees, including attorneys' fees, except as provided in the Settlement Agreement.

11. The Release in the Settlement Agreement is incorporated herein and the Class Members shall, by operation of law, be deemed to have released the Released Parties from the Released Claims. All entities who are Class Members (as defined in the Settlement Agreement) or who purport to assert claims on behalf of the Class Members are hereby and forever barred and enjoined from commencing, prosecuting, or continuing, against the Released Parties, in this or any other jurisdiction, any and all claims, causes of action or lawsuits,

21

which they had, have, or in the future may have, arising out of or related to any of the Released Claims as defined in the Settlement Agreement.

12. The Released Parties are hereby and forever released and discharged with respect to any and all claims or causes of action which the Class Members had, have, or in the future may have, arising out of or related to any of the Released Claims as defined in the Settlement Agreement and Class Counsel's Motion for Payment of Attorneys' Fees, Litigation Expenses, and Service Awards.

13. The notice given to the Settlement Class, was the most effective and practicable under the circumstances. This notice provided due and sufficient notice of the proceedings and of the matters set forth therein, including the proposed settlement, to all persons entitled to such notice, and this notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.

14. No objections to the Settlement or the Plaintiffs' currently pending Motion for Payment of Attorney's Fees, Litigation Expenses, and Service Awards ("Plaintiffs' Fee Petition") have been filed.

15. As set forth in the Notice to the Settlement Class, Named Plaintiffs' pending Fee Petition shall be decided separately from this Order.

16. Any member of the Settlement Class who failed to timely and validly request to be excluded from the Settlement Class shall be subject to and bound by the provisions of the Settlement Agreements, the Released Claims contained

therein, and this Order with respect to all Released Claims, regardless of whether such members of the Settlement Class seek or obtain any distribution from the Settlement proceeds.

17. Without affecting the finality of this Final Judgment in any way, this Court hereby retains continuing exclusive jurisdiction over: (a) consummation, administration and implementation of the Settlement Agreements and any allocation or distribution to Class Members pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) hearing and determining applications by Plaintiffs for attorneys' fees, costs, expenses, and interest; (d) the actions in this litigation until the Final Judgment has become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the Settlement Agreement; (e) hearing and ruling on any matters relating to any plan of allocation or distribution of proceeds from the Settlement; (f) the parties to the Settlement Agreement for the purpose of enforcing and administering the Settlement Agreement and the releases contemplated by, or executed in connection with the Settlement Agreement; (g) the enforcement of this Final Judgment; and (h) any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, that cannot be resolved by negotiation and agreement.

18. Defendant has served upon the appropriate state officials and the appropriate federal official notice under the Class Action Fairness Act, 28 U.S.C. § 1715.

19. The Settlement Administrator will proceed with disbursing the funds in the Settlement Fund in the order and in the amounts provided in the Court's separate Order concerning the Fee Petition as well as the Settlement Agreement.

20. The Court finds, pursuant to Rules 54(a) and (b) of the Federal Rules of Civil Procedure, that judgment should be entered and further finds that there is no just reason for delay in the entry of final judgment as to the parties to the Settlement Agreement. Accordingly, the Clerk is hereby directed to enter this Order Granting Final Approval of Class Action Settlement, Certification of Settlement Class, Order for Judgment, and Judgment as the Court's Final Judgment forthwith.

Let judgment be entered accordingly.

**BY THE COURT**

**IT IS SO ORDERED.**

DATED:

_____
HONORABLE SUSAN RICHARD NELSON
UNITED STATES DISTRICT COURT OF MINNESOTA